In re the **MARRIAGE OF Bonnie BALANSON, Appellant,**

and

**Richard Balanson, Appellee.**

No. 98CA0982.

Colorado Court of Appeals, Div. V.

July 22, 1999.

Rehearing Denied Sept. 23, 1999.

Certiorari Granted April 17, 2000.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colorado Const. art. VI, Sec. 5(3) and § 24–51–1105, C.R.S.1998

Litvak Litvak Mehrtens & Epstein, P.C., Ronald D. Litvak, W. Troy Romero, Denver, Colorado, for Appellant.

Stevens, Littman & Biddison, LLC, Craig A. Weinberg, Andrew C. Littman, Boulder, Colorado, for Appellee.

Opinion by Judge TAUBMAN.

Bonnie Balanson (wife) appeals from the final orders entered as part of the dissolution of the marriage between her and Richard Balanson (husband). We affirm in part, reverse in part, and remand with directions.

During the course of their 26–year marriage, husband and wife had acquired substantial wealth comprised primarily of an accumulation of husband's earnings and of stock options that husband had received from various employers. Moreover, wife was a beneficiary of a family trust created by her parents.

In its order dividing the marital property, the trial court distributed 60 percent to wife and 40 percent to husband. It concluded that 79 percent of the stock options were not marital property and thus awarded such stock options to husband. Because the remaining 21 percent of the stock options had minimal or no value, the trial court awarded them to husband as well. The trial court also concluded that the trust was separate property and that any increase in its value was marital property. It concluded, in the alternative, that if the wife did not have a property interest in the trust, her interest was, nevertheless, an economic circumstance which it considered in establishing an equitable distribution of marital property.

## I. Stock Options

Wife first contends that the trial court erred in determining that husband's stock options were not marital property. We agree in part.

The trial court found that on October 28, 1996, and April 17, 1997, husband was granted options to acquire a total of 300,000 shares of 3D Systems Corporation stock, which were exercisable incrementally on various dates. The court found that only husband could exercise the options and that he could not sell, transfer, assign, or otherwise dispose of them.

Under the terms of one agreement, husband could exercise the option to purchase 62,500 shares on October 28, 1997, which was approximately one week after the permanent orders hearing, and could exercise options to an additional 37,500 shares on the second anniversary of the grant. Under the terms of the other two agreements, one of which was entered into one year before the decree and the other approximately six months before the decree, husband could exercise options on certain shares or percentages of stock on the first through fourth anniversaries. All rights to exercise the option terminate upon termination of husband's employment or ten years, whichever occurs first. Installments were cumulative and, therefore, could be exercised as to any and all shares covered by an installment at any time after the installment became exercisable and prior to the expiration or termination of the option.

The court found that all of the options had been granted in consideration for future services by husband and as an incentive for his continued employment. The court concluded that the options would not become marital property until husband had performed the future services and earned the compensation for such services. However, since husband had performed all but eleven days of the service required to exercise the option to purchase 62,500 shares of stock, or 21 percent of the stock, the court concluded that such options constituted marital property.

The court further found, however, that the price required to exercise the 62,500 option shares exceeded the then current value of the stock. The court further found that to the extent the options might have value at a later date, such value would be attributable to services performed by husband in the

future. Thus, the court also concluded that the options had minimal or no value and awarded all of them to husband.

### A.

We review wife's contention in light of the holdings in *In re Marriage of Huston,* 967 P.2d 181 (Colo.App.1998) and *In re Marriage of Miller,* 915 P.2d 1314 (Colo.1996).

■ The court in *Miller* held that an employee's stock option granted in consideration of past services constitutes marital property when granted because the employee has earned the compensation represented by that portion of the option and may enforce the option agreement to that extent. On the other hand, the *Miller* court held that a stock option granted in consideration of future services does not constitute marital property until the employee has performed those future services.

■ In *Huston, supra,* a division of this court concluded that only a vested stock option is "property" subject to classification in a dissolution of marriage proceeding. Following *Miller, supra,* it held that vesting occurs when the employee has completed the minimum term of employment necessary for him or her to receive the benefit, whether or not the benefit has a readily ascertainable value or is subject to a substantial risk of forfeiture. The court held that the options there became vested as of the date of dissolution to the extent that wife had completed the minimum term of employment that would entitle her to receive such options following the execution of each option agreement.

### B.

■ Relying upon cases from other jurisdictions, wife urges us to determine that the stock options, even if non-vested, constitute marital property. We reject this assertion, since we are bound by the rule established in *Miller* that only the vested portions of stock options are marital property. Nevertheless, upon applying *Miller* here, we conclude that the trial court erred in determining that only 21 percent of the options here were marital property.

■ In *Miller,* the case was remanded to the trial court to determine the extent to which each option represented consideration for past or future services. The supreme court instructed that, upon making such determination, the trial court should then determine an appropriate means of evaluating those portions of the stock options, which constituted marital property, that reflect compensation for future services. Thus, the *Miller* court acknowledged that portions of stock options may be marital property to the extent that services contributing to entitlement to the stock options were performed during the marriage. In addition, it left open the possibility of applying the "time-rule" formula to distribute the marital portion of the stock options. *See In re Marriage of Hunt,* 909 P.2d 525 (Colo.1995) (time rule formula includes marital fraction which determines marital interest in pensions).

Here, the trial court found that all of the stock options were granted to husband in consideration of future services and as an incentive for his continued employment as president and chief operating officer. Neither party contests this finding. Accordingly, it is binding on review. *See In re Marriage of Dwyer,* 825 P.2d 1018 (Colo.App. 1991).

■ However, by the time the decree was entered, husband had already performed part of the "future" services that would entitle him to exercise, at certain future dates, options of certain shares over and above the options on 62,500 shares for which he had already performed services. The trial court classified the entirety of those options as separate property because they could not be exercised until after the decree. The trial court erred in so concluding. Under the *Miller* analysis, the court should have concluded that the additional options were vested and were marital property to the extent that the services entitling husband to exercise certain options at a later date had been performed prior to the entry of the decree. On remand, the trial court must devise a method to distribute the marital portion of the options. We agree with wife that the trial court may apply the "time-rule" formula to do so.

In *Huston*, the division held that a trial court has discretion to determine the appropriate method for distribution of stock options, once they have been classified as marital property. The *Huston* court approved the use of the reserve jurisdiction method of dividing stock options. Although both *Miller* and *Huston* suggest that a trial court has discretion to apply the "time rule" formula to the division of stock options, no Colorado appellate decision has yet approved this distribution method explicitly. We do so now.

The "time-rule" formula has been adopted in this state to divide pension benefits in dissolution of marriage actions. *See In re Marriage of Hunt, supra.*

The "time-rule" formula has also been adopted in a number of other jurisdictions to divide stock options when the rights under the option agreement were acquired during the marriage. *See In re Marriage of Hug*, 154 Cal.App.3d 780, 201 Cal.Rptr. 676 (1984); *Green v. Green*, 64 Md.App. 122, 494 A.2d 721 (1985); *Smith v. Smith*, 682 S.W.2d 834 (Mo.App.1984); *Garcia v. Mayer*, 122 N.M. 57, 920 P.2d 522 (1996) (observing that the majority of jurisdictions treat unvested stock options as marital property); *In re Marriage of Powell*, 147 Or.App. 17, 934 P.2d 612 (1997); *Stachofsky v. Stachofsky*, 90 Wash. App. 135, 951 P.2d 346 (1998); *but see Hann v. Hann*, 655 N.E.2d 566 (Ind.App.1995).

Under this approach, the risk that husband may lose the right to exercise the options will be shared by the parties. *See In re Marriage of Smith, supra.* Alternatively, the trial court has discretion to reserve jurisdiction to distribute the stock options if and when they are exercised. *In re Marriage of Huston, supra.*

Therefore, this matter must be remanded to the trial court to determine the marital portion of the additional stock options granted to husband and to apply either the time-rule formula or to reserve jurisdiction to divide all marital portions of the options when they are exercised.

### C.

Wife contends that the trial court should have divided the stock options in kind because their value was subject to significant fluctuation. We disagree.

First, we reject husband's argument that the issue was not properly preserved. The record shows that wife did request that she be awarded one half of husband's stock options to be held by him in trust until such time as they could be exercised.

Because the options here could not be transferred or assigned, a division in kind would have been fruitless.

## II. Family Trust

### A.

Wife also asserts that the trial court erred in determining that she held a property interest in the entire corpus of the "Sjostrand family trust." At the permanent orders hearing, she asserted that her beneficial interest in the trust was merely an expectancy and, therefore, did not constitute a part of her property. We agree that the trial court erred in its ruling but conclude that such error was harmless.

Wife's parents established a trust during the marriage, which reserved to them the power to alter, amend, or revoke the trust until one of them died. The trust was amended several times before wife's mother died, when it became irrevocable and non-modifiable. Wife's brother will become the successor trustee when her father dies.

When wife's mother died, the trust was to be divided into two trusts, A and B. Wife's father, as trustee, must pay the entire net income from both trusts to himself during his lifetime and he has the discretion to invade the corpus for his own support, care, and maintenance. Upon his death, the corpus of Trust A will be distributed as he designates in his will, and any portion not designated shall go into Trust B. Then, the trustee, who will be wife's brother, must divide Trust B into as many equal shares as there are living children of the trustors. Wife and her brother were the only living children of her parents.

As of the date of permanent orders, the trust could not be revoked, altered, or modified, and, at that time, the court determined its assets to be $1.3 million.

The trial court determined that wife's interest in the trust was a vested remainder, subject to divestment only if she predeceased her father. Therefore, the court concluded that the trust constituted property subject to division as part of the dissolution of marriage. Finding that it was a gift to wife during the marriage, the court further concluded that the trust constituted wife's separate property and, therefore, the appreciation during the marriage constituted marital property. However, the court also found that no evidence had been presented to establish the amount of appreciation of the corpus during the marriage. Accordingly, the court determined that because one half of the trust will vest in wife so long as her father predeceases her, the court awarded the marital property portion of the trust to wife. It valued that marital portion of the trust at $650,000.

The trial court alternatively found that, even if wife did not have a property interest in the trust, her interest was an economic circumstance that was relevant to the division of other marital property and the determination of maintenance. The court concluded that even if the value of the trust were excluded, the property division would essentially result in an equal amount of property being awarded to each party.

■ When a trust permits the trustee to distribute to a beneficiary so much, if any, of the income and principal as such trustee in his or her discretion sees fit to distribute, the beneficiary has no property interest or rights in the distributed funds. In that circumstance, the rights of the beneficiary are merely an expectancy and do not rise to the level of property. *In re Marriage of Rosenblum*, 43 Colo.App. 144, 602 P.2d 892 (1979).

■ In such a case, the beneficiary's interest in a discretionary trust is not property within the meaning of § 14–10–113, C.R.S. 1998, because the beneficiary has no contractual or enforceable right to income or principal from the trust, cannot force any action by

the trustee unless the trustee performs dishonestly or not at all, and has an interest that is not assignable and cannot be reached by creditors. *In re Marriage of Jones*, 812 P.2d 1152 (Colo.1991).

The *Jones* court stated that a discretionary trust differs from those trusts that grant the beneficiary some future, vested benefit not within the discretion of the trustee to withhold, but whose value may be uncertain at the time of marriage. The court did not address whether vested interests in trusts subject to divestment were marital or separate property for purposes of § 14–10–113. It observed that other jurisdictions differ in determining whether such interests constitute property subject to division in dissolution of marriage proceedings.

■ Relying on those divergent cases, the parties here disagree as to whether wife's interest in the family trust constitutes property under § 14–10–113.

We resolve this dispute by considering Trusts A and B separately.

As noted, the income from Trust A must go to wife's father during his lifetime. Significantly, under Article V of the trust, wife's father was given a power of appointment to pass the entire remaining corpus of Trust A through his last will, without any limitation as to the beneficiaries who could be designated in such will.

■ Accordingly, wife has no interest in the income from Trust A and only a contingent interest in the corpus of Trust A. Under these circumstances, her interest in Trust A is analogous to that in *In re Marriage of Rosenblum*, *supra*, and her rights are merely an expectancy and do not rise to the level of property.

■ With regard to Trust B, the circumstances are somewhat different. As with Trust A, wife's father is to receive the income from Trust B. Under Article IV of the trust, if the trustee deems that his income payments from Trust A and B are insufficient, he is entitled to pay such sums out of principal as he deems necessary for his proper support, care, and maintenance. The trust further states that payments of principal are

to be made first out of Trust A until it is exhausted and thereafter out of Trust B. Thus, under Trust B, as with Trust A, the trustee, wife's father, has unfettered discretion to distribute to himself as much of the income and principal as he sees fit to distribute. Consequently, wife's interest in Trust B is similarly an expectancy and does not rise to the level of a property interest.

This conclusion is not at odds with language in *In re Marriage of Jones, supra,* 812 P.2d at 1157, that "a discretionary trust differs from those trusts that grant the beneficiary some future, vested benefit not within the discretion of the trustee to withhold, but whose value may be uncertain at the time of the dissolution of marriage." Here, wife has a vested interest subject to divestment in the event that she predeceases her father. Although her father does not have the discretion to withhold her interest in the trust, he does have broad discretion to spend or otherwise convey the principal and interest of both Trusts A and B.

We agree with the analysis of the Indiana Supreme Court in the factually similar case of *Loeb v. Loeb,* 261 Ind. 193, 198, 301 N.E.2d 349, 352 (1973), in which the court concluded that husband's future interest in the trust at issue—a vested interest subject to complete divestment—was "so remote that it should not have been included in the property settlement award." *See also Kroha v. Kroha,* 265 Ark. 170, 578 S.W.2d 10 (1979) (contingent interest in testamentary trust is not marital property); *Storm v. Storm,* 470 P.2d 367 (Wyo.1970) (prospective expectancy of an estate from testamentary trust is not marital property); *but cf. Davidson v. Davidson,* 19 Mass.App. 364, 474 N.E.2d 1137 (1985) (husband's remainder interest in testamentary trust was marital property).

■ Here, we conclude that wife's interest in the family trust was too remote to be considered property. She did not have a right to receive income from either Trust A or Trust B. Further, her father had the discretion to pass the entirety of the corpus of Trust A through his will and to expend all of the corpus of Trust B for his own care and maintenance. Even though wife had a vested interest, subject to complete divestment,

we conclude that such interest is more properly characterized as an expectancy rather than as property.

■ Accordingly, we conclude that the trial court erred in determining that wife held a property interest in the trust. Nevertheless, we also conclude that the trial court's error in this regard was harmless. In both *In re Marriage of Jones, supra,* and *In re Marriage of Rosenblum, supra,* the courts determined that even though interest in the trusts there were not property under § 14–10–113, they were properly considered by the trial court as an economic circumstance in determining a just division of marital property pursuant to § 14–10–113(1)(c), C.R.S.1998.

Here, the trial court specifically found that even if wife's interest in the trust was not marital property, it was an economic circumstance of the wife and was appropriately considered in making the division of property. The court specifically found that its property division would not have been any different even if wife's interest in the trust were not considered to be marital property "since the interest in the trust was set aside/awarded to her and was considered as an economic circumstance in making the overall property division equitable." The trial court further noted that if wife's interest in the trusts were excluded, it resulted in a property division of approximately 50 percent—50 percent, which the court also found to be equitable.

Accordingly, we perceive no reversible error in the trial court's ultimate ruling in regard to the trust.

### B.

Alternatively, wife asserts that the court erred in valuing the trust because there was no evidence presented as to its value on the date when it was established. She argues that the court should have allowed the parties to present additional evidence on this issue. We disagree.

■ Because we have determined that, even if wife did not have a property interest in the trust, her interest was properly considered as an economic circumstance that was

relevant to the division of other marital property and the determination of maintenance. Further, the trial court found, with record support, that if the value of the trust were excluded, the property division would essentially result in an equal amount of property being awarded to each party. Accordingly, we reject wife's contention.

## III. Interpersonal Gifts

Wife also contends that the trial court erred in valuing gifts that husband gave to her during the marriage. We perceive no reversible error.

The presumption that property acquired during the marriage is marital under § 14–10–113(3), C.R.S.1998, can be overcome by showing that the property was acquired by gift or was excluded by valid agreement of the parties. Determination of these latter issues hinges on the intent and acts of the parties, which are questions of fact for the trial court to resolve. If the record supports the findings, the trial court's determination is binding on appeal. *In re Marriage of Bartolo,* 971 P.2d 699 (Colo.App. 1998).

Here, the trial court did not have the benefit of *Bartolo* and concluded, incorrectly, that gifts from one spouse to the other during the marriage necessarily constitute marital property. Again, however, the trial court concluded that, even if wife's jewelry and furs were separate property, they constituted an economic circumstance that was relevant in dividing the marital property equitably. *See* § 14–10–113(1)(c), C.R.S. 1998. Because of these alternative findings, any error in this regard was harmless.

## IV. Frequent–Flyer Miles

Next, wife contends that the trial court failed to divide the parties' substantial frequent-flyer miles when the evidence showed that they were assignable. Husband states that there was no evidence provided to establish a value for the miles and argues, therefore, that an in-kind division would be appropriate.

Because there is no disagreement that the court should have made an in-kind division of the frequent-flyer miles, the court on remand should enter such an order. *See Beasley v. Beasley,* 717 So.2d 208 (Fla.App.1998).

## V. Leased Automobile

Wife also asserts that the trial court erred in awarding to her and valuing a leased automobile at $13,000, when she has no right to end the lease and cannot sell, transfer, assign, or encumber that vehicle. We disagree.

While the terms of the lease restricted wife's ability to sell the vehicle, such restrictions did not preclude classification of the automobile as an asset to be valued and distributed as part of the dissolution. *See People v. Johnson,* 906 P.2d 122 (Colo.1995) (lease obtained by wife was arguably marital property because she acquired it subsequent to the marriage but prior to a legal separation); *Young v. Golden State Bank,* 39 Colo. App. 45, 560 P.2d 855 (1977) (lease interest was an asset of the business).

Further, the court's valuation is based upon husband's testimony that he had recently prepaid $13,500 on the lease and that wife was relieved of any obligation to make such payments. Therefore, we conclude that the court did not err in valuing the vehicle based upon such prepayment.

## VI. Insurance Claim

Wife also asserts that the trial court erred in valuing a potential insurance claim when neither party listed it as an asset on his or her financial affidavit. She argues that a claim has not been submitted to the insurance company, its value is speculative, and any funds received would be used to repay accident-related expenses that she has incurred. We agree.

Assets not falling within the definition of separate property are presumed to be marital property subject to equitable distribution by the court. *In re Marriage of Foottit,* 903 P.2d 1209 (Colo.App.1995).

Applying that presumption, a division of this court held that a personal injury settlement offer was marital property because the injury occurred and the offer was made prior

to the date of the hearing for entry of final orders. *In re Marriage of Fjeldheim*, 676 P.2d 1234 (Colo.App.1983).

Other contingent interests have similarly been classified as marital property. *See In re Marriage of Fields*, 779 P.2d 1371 (Colo. App.1989) (unliquidated personal injury claim is marital property); *see also In re Marriage of Simon*, 856 P.2d 47 (Colo.App.1993) (structured settlement received for husband's personal injury and wife's loss of consortium claims); *In re Marriage of Smith*, 817 P.2d 641 (Colo.App.1991) (dispositive question in determining whether workers' compensation benefits are marital property is the extent to which the award compensates for loss of earning capacity and medical expenses incurred during marriage).

In dividing the unliquidated personal injury claim, the division in *In re Marriage of Fields, supra*, 779 P.2d at 1374 explained that:

> The trial court should consider the actual effect that the personal injury had on the marital estate. Among the factors that could affect the marital estate are items such as lost income, medical expenses, and inability to meet marital obligations such as maintenance and child support. This list is not meant to be all-inclusive of the factors to be considered as other items might be relevant in different circumstances.

Because a trial court may have some difficulty in valuing and dividing an unliquidated personal injury claim, the division in *Fields* agreed with the trial court that a percentage share of any future benefits received was a proper method to divide this type of marital property.

Here, the benefits in question were personal injury protection (PIP) benefits, as provided for under § 10-4-706(1)(d)(I), C.R.S. 1998, which wife presumably could claim for the care of herself and her daughter during their initial rehabilitation from the injuries sustained in an automobile accident in November 1996. In his closing argument, husband asserted that wife simply needed to submit her statement of home services to the insurance company and she could receive a $16,150 award. The trial court included this sum in the list of property awarded to wife.

We agree with wife that it was error to classify the claim and value it as a marital asset. At the time of the hearing, wife had not filed a claim for medical benefits. Furthermore, husband's asserted value for the reasonably incurred essential services under § 10-4-706(1)(d)(I) was based upon the maximum amount of reimbursement available under the statute. Accordingly, the trial court is instructed on remand to determine whether an insurance claim has been filed, to determine the extent to which any insurance payments constitute marital property, and, to that extent, to divide such marital property consistently with the above discussion.

## VII. Moot Issues

Wife asserts that the trial court erred in valuing the parties' time-share condominium in Mexico because the court failed to address payment of a $3,500 debt associated with that property. Husband states that this debt has been paid, and wife does not contend otherwise in her reply brief. Therefore, we conclude that the issue is now moot.

Wife also asserts that the trial court erred in not awarding to either party the horses, which were used by her daughter for recreation, or the obligation to maintain them.

We agree with husband's position that the child support order covered maintenance of the horses. Further, husband has indicated that the horses were sold in the summer of 1998 and wife has not asserted otherwise in her reply brief. Therefore, this issue is also moot.

## VIII. Maintenance

The trial court determined that wife was unemployed and that she met the threshold of need for an award of maintenance. It determined that wife lacked sufficient property, including marital property apportioned to her to meet her reasonable needs, and that she was then unable to support herself through appropriate employment. The trial court specifically found that even if wife's interest in the family trust was not marital property, it was a relevant factor under

§ 14–10–114(2), C.R.S.1998, in determining issues of maintenance. It found that although her affidavit reflected a significantly higher amount, the current monthly expenses to maintain the standard of living enjoyed during the marriage were $12,500.

The court further found that wife had the ability to generate approximately $3,800 per month income from the reasonable investment of marital property it had awarded to her. Based upon a stipulation of the parties, the court also found that wife was capable of working part-time as a dental hygienist as of August 1, 1998, and could earn $19,000 per year, and that she would be capable of earning $38,000 per year beginning May 1, 1999. The court further found that husband's salary was $225,000 per year. It ordered husband to pay wife maintenance of $8,700 per month beginning January 1, 1998. In consideration of wife's anticipated income, it ordered maintenance in the reduced amounts of $5,500 per month commencing May 1, 1999, and $3,700 per month beginning May 16, 2004, until further order of court.

## A.

Wife first contends that the trial court erred in determining that her reasonable monthly needs were $12,500, when that was only a "fraction" of the monthly expenses established as having been incurred during the marriage. We disagree.

The trial court has broad discretion in determining the amount and duration of maintenance. *In re Marriage of Banning,* 971 P.2d 289 (Colo.App.1998).

The standard of living established during the marriage is one of the statutory factors that must be considered in determining the amount and duration of maintenance. Section 14–10–114(2)(c), C.R.S.1998. This factor is particularly important where the marriage is one of long duration and the wife worked as a homemaker and remained at home to raise the children. *In re Marriage of Sim,* 939 P.2d 504 (Colo.App.1997).

If the trial court considers the statutory factors, its maintenance ruling will not be overturned absent an abuse of discretion. *See In re Marriage of Martin,* 707 P.2d 1035 (Colo.App.1985). Further, the determination of the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence is within the discretion of the trial court. *In re Marriage of Chester,* 907 P.2d 726 (Colo.App.1995).

Here, the record shows that the determination of wife's reasonable monthly needs was a fiercely contested issue and that a great deal of the testimony, including that of husband's expert, concerned this issue. It appears that the court accepted husband's estimate of the reasonable monthly needs for wife and her daughter. Accordingly, because the determination of wife's monthly needs is supported by the conflicting evidence in the record, we will not substitute our judgment for that of the trial court.

## B.

Wife also asserts that the evidence does not support the periodic decreases in the amount of maintenance that husband is obligated to pay. She argues that it is improper to reduce support upon her receipt of pension benefits because that, in effect, requires her to consume her marital property in order to meet her reasonable needs. We disagree.

The trial court has discretion to award maintenance that decreases incrementally at certain times, provided there is evidence in the record upon which such decreases may be predicated. *In re Marriage of Sim, supra.* Alternatively, if the court is aware of a definite future contingency but its financial impact is unknown, the court may reserve jurisdiction to address maintenance at the appropriate time. *See In re Marriage of Folwell,* 910 P.2d 91 (Colo.App.1995) (receipt of benefits in a known amount at a definite date in the future is a proper consideration in setting the amount and duration of maintenance).

Here, the first reduction in maintenance coincided with the parties' stipulation that wife would be able to work full time beginning May 1, 1999, with an earning potential of $38,000. Thus, as of that date, wife's maintenance decreased from $8,700 per month to $5,500 per month, with the

decrease equal to the amount of wife's projected monthly income. The evidence in the record also showed that wife would be eligible in the year 2004 to receive monthly benefits from the IBM pension that was awarded solely to her. Those pension benefits, $1,800 per month, equaled the further decrease in wife's maintenance from $5,500 to $3,700 per month.

We reject wife's argument that the court may not consider her receipt of those benefits in determining the proper amount of maintenance. *See In re Marriage of Sim, supra; In re Marriage of Mirise*, 673 P.2d 803 (Colo.App.1983). Inasmuch as there were definite times at which wife's financial resources would increase and the amounts were known, we further conclude that the trial court did not abuse its discretion in ordering incremental decreases in maintenance. *See In re Marriage of Sim, supra.*

### C.

■ Wife also argues that the court erred in determining that her share of the Everen investment account would generate $3,800 per month in interest income. According to wife, the value of that account had decreased from $1.6 million at the time of the permanent orders hearing to $918,000 when the final orders were entered. She asserts that the court erred by not reconsidering the entire property award or, at a minimum, by not increasing the amount of maintenance, as she had requested in her post-trial motion, which was denied by operation of C.R.C.P. 59(j). We agree. On remand the trial court should reconsider this issue.

■ Trial courts should correct irregularities in the proceedings or other errors that may affect the fairness of the proceedings and should grant post-trial relief to address those issues. *Koch v. District Court*, 948 P.2d 4 (Colo.1997).

Here, the trial court distributed $575,529 of the Everen account to wife and $1,091,000 to husband, and concluded that the division of all marital property resulted in division of 60 percent to wife and 40 percent to husband. In her post-trial motion, wife asserted that, because she only received $337,260 from the

Everen account, the finding that she could earn $3,800 per month from the investment of marital property was no longer accurate.

Husband objected to any reconsideration. He reasoned that the parties shared in the proportionate decrease in value of the Everen account and that, because he received a greater amount of that asset, he was more severely affected by its decrease in value. He also asserted that "the current value of the stocks transferred to wife is now up by over $18,400," and that based on changed financial circumstances, wife had sufficient resources to meet her own needs.

Husband's written closing argument in the trial court shows that wife's share of the Everen account was the marital property that was expected to generate the $3,800 per month income. Thus, it appears that the amount of income that wife could contribute to her own needs was significantly reduced because of the decrease in the value of the Everen account. Accordingly, even though the trial court was not required to reconsider the property division because of the decrease in the value of that account, on remand, the trial court should reconsider the amount of maintenance awarded to wife.

### IX. Tax Debt and Post–Trial Motion

Because husband asserts, and wife does not dispute, that he paid the tax debt at the level it existed at the time of permanent orders out of his share of the Everen account, we reject wife's argument that the trial court was required to grant her post-trial motion in this regard.

### X. Child Support

Wife asserts that the trial court failed to consider the expenses associated with food, shelter, and other ordinary expenses attributable to the minor child in addition to the expenses that reflected the standard of living in this case. We disagree.

■ When the combined adjusted gross income of the parties exceeds the uppermost levels of the guideline, it is to be presumed, subject to rebuttal, that the minimum amount of support is that set forth in the highest level of the guidelines. *In re Mar-*

*riage of Van Inwegen,* 757 P.2d 1118 (Colo. App.1988); § 14–10–115(10)(a)(II), C.R.S. 1998.

The actual level of support required, however, will depend upon the court's exercise of its discretion. In exercising such discretion, the court must consider the financial resources of both parents and of the children, the physical and emotional condition of the children and their educational needs, the needs of the noncustodial parent, and the standard of living that the children would have enjoyed had the parents' marriage not been dissolved. *In re Marriage of Schwaab,* 794 P.2d 1112 (Colo.App.1990).

The court must attempt to translate, to the extent possible under the evidence, a higher living standard and additional needs of a child into specific monetary requirements. It should also consider the amount of a reasonable *pro rata* portion of the necessary general family expenses. *In re Marriage of Schwaab, supra.*

Here, wife itemized the additional expenses that she believed reflected the standard of living of the parties' daughter. The parties agreed that the court should use that list to determine appropriate expenses for the child. Husband contested the amounts that were listed for some expenses, including the horse expenses.

Wife testified that she included $1,000 per month for the child's share of the room and board. She contends that the list adopted in the court's written order does not contain an amount for such expenses. However, the court determined wife's monthly needs by reducing the prior family expenditures, which had been spent during the marriage on a family of four, to expenses for a family of two. Thus, the child's *pro rata* share of the standard and ongoing living expenses was included in wife's monthly needs. Accordingly, the trial court did not abuse its discretion in determining the appropriate amount of child support.

## XI. Life Insurance

Wife also asserts that the trial court erred in not requiring husband to maintain life insurance to secure the obligations for both maintenance and child support. However, because this issue was not raised in the trial court, we do not address it. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992). Nevertheless, it may be raised on remand.

## XII. Attorney Fees

Finally, wife contends that the trial court did not properly consider her request for attorney fees. We disagree. The purpose of an award of attorney fees is to apportion the costs of dissolution equitably between the parties based upon their current financial resources. *In re Marriage of Foottit, supra.* The award is discretionary and will not be disturbed on appeal if supported by the evidence. *In re Marriage of Weibel,* 965 P.2d 126 (Colo.App.1998).

Here, the trial court found only that it had considered the financial resources of both parties and had concluded that husband should pay as wife's attorney fees the sum of $12,500. Because the trial court found that wife had considerable assets, we conclude that the order awarding wife only a portion of her attorney fees does not constitute an abuse of discretion. *See In re Marriage of Weibel, supra.*

In summary, the part of the judgment concerning the classification and division of the stock options and the amount of income wife could earn to satisfy her need for maintenance are reversed and the cause is remanded for reconsideration of those issues as set forth above. On that remand, the court is also instructed to enter further orders dividing the frequent flyer miles and to amend the order insofar as it included the PIP benefits as an asset awarded to wife. In all other respects, the judgment is affirmed.

Judge ROTHENBERG and Judge ROY concur.