No. 18,942.

LAS ANIMAS COUNTY HIGH SCHOOL DISTRICT *v.*
HARRY RAYE, COUNTY SUPERINTENDENT OF SCHOOLS, ET AL.
(356 P. [2d] 237)

Decided October 31, 1960.

Mr. FRANKLIN W. AZAR, Mr. LOUIS J. STUART, for plaintiff in error.

Mr. DEAN C. MABRY, Mr. CHARLES S. VIGIL, for defendants in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

THE parties here appear in the same order as they appeared in the trial court.

In 1957 the General Assembly of the State of Colorado enacted legislation establishing procedures for the organization or reorganization of public school districts in the state; C.R.S. '53, 123-25-1 *et seq.*, Cum. Supp. Pursuant thereto and in strict compliance with the procedures therein set forth, a plan for the reorganization of the Las Animas County High School District was formulated. This plan provided for the reorganization of the old Las Animas County High School District, hereinafter referred to as the old district, into five new districts. As required by statute, the reorganization plan was submitted to, and approved by, the electorate of four of the five new districts. For reasons not appearing in the record, though allowed to vote thereon, the plan was not submitted to a vote of the electorate in the fifth district, referred to in the briefs as the Sopris District. The four districts that had approved the plan proceeded with the reorganization, leaving the territory encompassed by the Sopris District as the skeletal remains of

the old district or as plaintiff designates it, the "retained area."

The committee that had drawn up the plan of reorganization included therein a provision for the distribution of the "properties and cash assets" of the old district. In substance, this plan provided that one-fifth of said properties and cash assets was to go to each of the five new districts. It is clear from the record that in including this provision the committee intended to provide for the redistribution of all of the assets of the old district to the new districts on a pro rata basis. In furtherance of this objective, they utilized the terminology "properties and cash assets" which is found in the statute authorizing the redistribution. The pertinent part of this statute, C.R.S. '53, 123-25-13, Cum. Supp., reads as follows:

"(1) The plan for organization shall contain a specific proposal for the equitable adjustment of all, or any part, of the properties and cash assets of the districts involved."

Prior to the reorganization, the old district had assessed a mill levy tax upon all property in the district. At the date of reorganization, some part of this tax had not been collected. The sole question of substance presented here and in the trial court is whether such uncollected tax revenues may properly be classified as "properties" or as "cash assets."

Plaintiff urges that they cannot be so classified and asserts that it is entitled to such revenues when and if collected, by virtue of the provisions of C.R.S. '53, 123-25-29, Cum. Supp., which provision establishes procedures for the disposition of assets of reorganized districts where the reorganization plan does not otherwise provide for their distribution.

Defendants, on the other hand, urge that the provisions in the reorganization plan for the distribution of the "properties and cash assets," having been phrased in the terminology of the statute, provide a comprehen-

sive scheme for the distribution of all assets of the district, including the uncollected tax revenues. The latter interpretation was adopted by the trial court. In so ruling we believe the court correctly interpreted the statutory language, as incorporated into the reorganization plan.

■ The General Assembly has created a comprehensive plan for the reorganization of public school districts in the state. It has provided the framework whereby old districts may be completely abolished and new ones created. It is inconceivable that it would authorize the creation of such a plan, and, at the same time, fail to provide that the assets of the old districts could be distributed to the new ones. Such would be the construction that plaintiff would have us place upon the statutory language. Such construction would be not only unreasonable, it would amount to an unwarranted deviation from established interpretation of the terms "cash assets" and "properties." These terms, when incorporated into reorganization plans, are sufficiently broad to authorize the redistribution of all assets of reorganized districts. It thus becomes unnecessary to attempt to classify uncollected tax revenues as one or the other. If necessary to do so, they could be classified as cash assets, as was done by the Supreme Court of Washington in *Seymour v. City of Ellensburg* (1914), 81 Wash. 365, 142 Pac. 875. In commenting upon that decision, the court later stated in *Raynor v. King County* (1940), 2 Wash. (2d) 199, 97 P. (2d) 696, 703:

"We think an item, to be considered as a cash asset for this purpose, should be something which has a definite and certain present value, equivalent to cash. The only items which we have heretofore allowed as cash assets, other than cash or marketable securities, are taxes assessed and uncollected, and interest thereon, and these last items were allowed on the theory that the county, having a lien on the property assessed, is assured of their collection."

On the other hand, if not classified as cash assets, they would most certainly be included in the more comprehensive term "properties." See *Ludlow-Saylor Wire Co. v. Wollbrinck* (1918), 275 Mo. 339, 205 S.W. 196, in which the court set forth the commonly accepted definition of "property" as follows:

"In law and in the broadest sense 'property' means 'a thing owned,' and is, therefore, applicable to whatever is the subject of legal ownership. It is divisible into different species of property, including physical things, such as lands, goods, money; intangible things, such as franchises, patent rights, copyrights, trade-marks, trade-names, business good will, rights of action, etc. In short it embraces anything and everything which may belong to a man and in the ownership of which he has a right to be protected by law."

In any event "cash assets," within the contemplation of the statute involved, does not mean the same thing as "cash on hand" as plaintiff contends. See *State v. New York, N. H. and H. R. Co.* (1891), 60 Conn. 326, 22 Atl. 765, 767.

It is thus apparent that resort to classification of such uncollected taxes as either "cash assets" or as "properties" is unnecessary in the instant case. The committee that drew up the reorganization plan intended to provide for the redistribution of all of the assets of the old district. By using the statutory terminology, they effectively accomplished the intended result.

Plaintiff also argues that the trial court erred in refusing to allow the testimony of a rebuttal witness relating to the meaning of "cash assets." From the preceding discussion it is apparent that such testimony was neither relevant nor material to the issues and it was not error to reject it.

Finding no substantial error in the record, the judgment is affirmed.

Mr. Justice Day and Mr. Justice Frantz concur.