## No. C-1054

## In re the Marriage of: Anne P. Graham v. Dennis J. Graham

(574 P.2d 75)

Decided January 9, 1978. Rehearing denied February 21, 1978.

Williams, Trine & Greenstein, P.C., Charles E. Williams, Lee D. Warkentine, for petitioner.

Donald S. Molen, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

██ This case presents the novel question of whether in a marriage dissolution proceeding a master's degree in business administration (M.B.A.) constitutes marital property which is subject to division by the court. In its opinion in *Graham v. Graham*, 38 Colo. App. 130, 555 P.2d 527, the Colorado Court of Appeals held that it was not. We affirm the judgment.

██ The Uniform Dissolution of Marriage Act requires that a court shall divide marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors. The Act defines marital property as follows:

"For purposes of this article only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

"(a) Property acquired by gift, bequest, devise, or descent;

"(b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

"(c) Property acquired by a spouse after a decree of legal separation; and

"(d) Property excluded by valid agreement of the parties."

Section 14-10-113(2), C.R.S. 1973.

The parties to this proceeding were married on August 5, 1968, in Denver, Colorado. Throughout the six-year marriage, Anne P. Graham, wife and petitioner here, was employed full-time as an airline stewardess. She is still so employed. Her husband, Dennis J. Graham, respondent, worked part-time for most of the marriage, although his main pursuit was his education. He attended school for approximately three and one-half years of the marriage, acquiring both a bachelor of science degree in engineering physics and a master's degree in business administration at the University of Colorado. Following graduation, he obtained a job as an executive assistant with a large corporation at a starting salary of $14,000 per year.

The trial court determined that during the marriage petitioner contributed seventy percent of the financial support, which was used both for family expenses and for her husband's education. No marital assets were accumulated during the marriage. In addition, the Grahams together managed an apartment house and petitioner did the majority of housework and cooked most of the meals for the couple. No children were born during the marriage.

The parties jointly filed a petition for dissolution, on February 4, 1974, in the Boulder County District Court. Petitioner did not make a claim for maintenance or for attorney fees. After a hearing on October 24, 1974, the trial court found, as a matter of law, that an education obtained by one spouse during a marriage is jointly-owned property to which the other spouse has a property right. The future earnings value of the M.B.A. to respondent was evaluated at $82,836 and petitioner was awarded $33,134 of this amount, payable in monthly installments of $100.

The court of appeals reversed, holding that an education is not itself "property" subject to division under the Act, although it was one factor to be considered in determining maintenance or in arriving at an equitable property division.

I.

The purpose of the division of marital property is to allocate to each spouse what equitably belongs to him or her. *See H. Clark, Domestic Relations* § 14.8. The division is committed to the sound discretion of the trial court and there is no rigid mathematical formula that the court must adhere to. *Carlson v. Carlson*, 178 Colo. 283, 497 P.2d 1006; *Greer v. Greer*, 32 Colo. App. 196, 510 P.2d 905. An appellate court will alter a division of property only if the trial court abuses its

discretion. This court, however, is empowered at all times to interpret Colorado statutes.

■ The legislature intended the term "property" to be broadly inclusive, as indicated by its use of the qualifying adjective "all" in section 14-10-113(2). Previous Colorado cases have given "property" a comprehensive meaning, as typified by the following definition: "In short it embraces anything and everything which may belong to a man and in the ownership of which he has a right to be protected by law." *Las Animas County High School District v. Raye*, 144 Colo. 367, 356 P.2d 237.

■ Nonetheless, there are necessary limits upon what may be considered "property," and we do not find any indication in the Act that the concept as used by the legislature is other than that usually understood to be embodied within the term. One helpful definition is "everything that has an exchangeable value or which goes to make up wealth or estate." *Black's Law Dictionary* 1382 (rev. 4th ed. 1968). In *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506, this court held that military retirement pay was not property for the reason that it did not have any of the elements of cash surrender value, loan value, redemption value, lump sum value, or value realizable after death. The court of appeals has considered other factors as well in deciding whether something falls within the concept, particularly whether it can be assigned, sold, transferred, conveyed, or pledged, or whether it terminates on the death of the owner. *In Re Marriage of Ellis*, 36 Colo. App. 234, 538 P.2d 1347, *aff'd, Ellis v. Ellis, supra.*

■ An educational degree, such as an M.B.A., is simply not emcompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

## II.

Our interpretation is in accord with cases in other jurisdictions. We have been unable to find any decision, even in community property states, which appears to have held that an education of one spouse is marital property to be divided on dissolution. This contention was dismissed in *Todd v. Todd*, 272 Cal. App.2d 786, 78 Cal. Rptr. 131 (Ct. App.), where it was held that a law degree is not a community property asset capable of division, partly because it "cannot have monetary value placed upon it." Similarly, it has been recently held that a person's earning capacity, even where enhanced by a law degree financed by the other spouse, "should not

be recognized as a separate, particular item of property." *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257.

Other cases cited have dealt only with related issues. For example, in awarding alimony, as opposed to dividing property, one court has found that an education is one factor to be considered. *Daniels v. Daniels,* 20 Ohio Op.2d 458, 185 N.E.2d 773 (Ct. App.). In another case, the wife supported the husband while he went to medical school. *Nail v. Nail,* 486 S.W.2d 761 (Tex.). The question was whether the accrued good will of his medical practice was marital property, and the court held it was not, inasmuch as good will was based on the husband's personal skill, reputation, and experience. *Contra, Mueller v. Mueller,* 144 Cal. App.2d 245, 301 P.2d 90 (Dist. Ct. App); *see* Annot., 52 A.L.R.3d 1344.

### III.

The trial court relied on *Greer v. Greer,* 32 Colo. App. 196, 510 P.2d 905, for its determination that an education is "property." In that case, a six-year marriage was dissolved in which the wife worked as a teacher while the husband obtained a medical degree. The parties had accumulated marital property. The trial court awarded the wife alimony of $150 per month for four years. The court of appeals found this to be proper, whether considered as an adjustment of property rights based upon the wife's financial contribution to the marriage, or as an award of alimony in gross. The court there stated that "* * * [i]t must be considered as a substitute for, or in lieu of, the wife's rights in the husband's property * * *." We note that the court did not determine that the medical education itself was divisible property. The case is distinguishable from the instant case in that here there was no accumulation of marital property and the petitioner did not seek maintenance [alimony].

### IV.

A spouse who provides financial support while the other spouse acquires an education is not without a remedy. Where there is marital property to be divided, such contribution to the education of the other spouse may be taken into consideration by the court. *Greer v. Greer, supra. See also Carlson v. Carlson,* 178 Colo. 283, 497 P.2d 1006. Here, we again note that no marital property had been accumulated by the parties. Further, if maintenance is sought and a need is demonstrated, the trial court may make an award based on all relevant factors. Section 14-10-114(2). Certainly, among the relevant factors to be considered is the contribution of the spouse seeking maintenance to the education of the other spouse from whom the maintenance is sought. Again, we note that in this case petitioner sought no maintenance from respondent.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE GROVES and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent.

As a matter of economic reality the most valuable asset acquired by either party during this six-year marriage was the husband's increased earning capacity. There is no dispute that this asset resulted from his having obtained Bachelor of Science and Master of Business Administration degrees while married. These degrees, in turn, resulted in large part from the wife's employment which contributed about 70% of the couple's total income. Her earnings not only provided her husband's support but also were "invested" in his education in the sense that she assumed the role of breadwinner so that he would have the time and funds necessary to obtain his education.

The case presents the not-unfamiliar pattern of the wife who, willing to sacrifice for a more secure family financial future, works to educate her husband, only to be awarded a divorce decree shortly after he is awarded his degree. The issue here is whether traditional, narrow concepts of what constitutes "property" render the courts impotent to provide a remedy for an obvious injustice.

In cases such as this, equity demands that courts seek extraordinary remedies to prevent extraordinary injustice. If the parties had remained married long enough after the husband had completed his post-graduate education so that they could have accumulated substantial property, there would have been no problem. In that situation abundant precedent authorizes the trial court, in determining how much of the marital property to allocate to the wife, to take into account her contributions to her husband's earning capacity. *Greer v. Greer*, 32 Colo. App. 196, 510 P.2d 905 (1973) (wife supported husband through medical school); *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo. App. 1976) (wife was breadwinner while husband was in law school).

A husband's future income earning potential, sometimes as indicated by the goodwill value of a professional practice, may be considered in deciding property division or alimony matters, and the wife's award may be increased on the ground that the husband probably will have substantial future earnings. *Todd v. Todd*, 272 Cal. App.2d 786, 78 Cal. Rptr. 131 (1969) (goodwill of husband's law practice); *Golden v. Golden*, 270 Cal. App.2d 401, 75 Cal. Rptr. 735 (1969) (goodwill of husband's medical practice); *Mueller v. Mueller*, 144 Cal. App.2d 245, 301 P.2d 90 (1956) (goodwill of husband's dental lab); *In re Marriage of Goger*, 27 Or. App. 729, 557 P.2d 46 (1976) (potential earnings of husband's dental practice); *In re Marriage of Lukens*, 16 Wash. App. 481, 558 P.2d 279 (1976) (goodwill of husband's medical practice indicated future earning capacity).

Similarly, the wife's contributions to enhancing the husband's financial status or earning capacity have been considered in awarding alimony

and maintenance. *Kraus v. Kraus*, 159 Colo. 331, 411 P.2d 240 (1966); *Shapiro v. Shapiro*, 115 Colo. 505, 176 P.2d 363 (1946). The majority opinion emphasizes that in this case no maintenance was requested. However, the Colorado statute would seem to preclude an award of maintenance here, for it restricts the court's power to award maintenance to cases where the spouse seeking it is unable to support himself or herself. Section 14-10-114, C.R.S. 1973.

While the majority opinion focuses on whether the husband's master's degree is marital "property" subject to division, it is not the degree itself which constitutes the asset in question. Rather it is the increase in the husband's earning power concomitant to that degree which is the asset conferred on him by his wife's efforts. That increased earning capacity was the asset appraised in the economist's expert opinion testimony as having a discounted present value of $82,000.

Unquestionably the law, in other contexts, recognizes future earning capacity as an asset whose wrongful deprivation is compensable. Thus one who tortiously destroys or impairs another's future earning capacity must pay as damages the amount the injured party has lost in anticipated future earnings. *Nemer v. Anderson*, 151 Colo. 411, 378 P.2d 841 (1963); Abram, *Personal Injury Damages in Colorado*, 35 Colo. L. Rev. 332, 338 (1963).

Where a husband is killed, his widow is entitled to recover for loss of his future support damages based in part on the present value of his anticipated future earnings, which may be computed by taking into account probable future increases in his earning capacity. *See United States v. Sommers*, 351 F.2d 354 (10th Cir. 1965); *Good v. Chance*, 39 Colo. App. 70, 565 P.2d 217 (1977). *See also* Colo. J. I. (Civil) 10:3.

The day before the divorce the wife had a legally recognized interest in her husband's earning capacity. Perhaps the wife might have a remedy in a separate action based on implied debt, quasi-contract, unjust enrichment, or some similar theory. *See, e.g., Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779 (1967). Nevertheless, the law favors settling all aspects of a dispute in a single action where that is possible. Therefore I would affirm the trial court's award.

I am authorized to state that MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES join in this dissent.