In re the Marriage of Bonnie BALANSON, Petitioner/Cross–Respondent,

and

Richard Balanson, Respondent/Cross–Petitioner.

No. 99SC811.

Supreme Court of Colorado,
En Banc.

May 29, 2001.

As Modified on Denial of Rehearing
June 25, 2001.

---

Litvak, Litvak, Mehrtens and Epstein, P.C., Ronald D. Litvak, W. Troy Romero, Denver, CO, Attorneys for Petitioner/Cross–Respondent.

Stevens, Littman & Biddison, LLC, Craig A. Weinberg, Andrew C. Littman, Boulder, CO, Attorneys for Respondent/Cross–Petitioner.

Justice RICE delivered the Opinion of the Court.

We issued a writ of certiorari to review the court of appeals' judgment in *In re Balanson*, 996 P.2d 213 (Colo.App.1999). In *Balanson*, the court of appeals affirmed in part and reversed in part final trial court orders entered as part of the dissolution of the marriage of Bonnie Balanson ("Wife") and Richard Balanson ("Husband"). The trial court's judgment included orders concerning Husband's employee stock options, Wife's interest in a family trust, interspousal gifts, maintenance, attorney fees, and child support. The court of appeals reversed the portion of the trial court's judgment concerning the classification and division of Husband's stock options and the portion concerning Wife's maintenance award. The court of appeals affirmed, however, the trial court's determinations concerning Wife's interest in the family trust and the interspousal gifts, holding that the trial court's errors with regard to these issues were harmless. Finally, the court of appeals affirmed the trial court's ruling on the issue of child support.

We granted certiorari to determine the appropriate treatment in a dissolution of marriage case of unexercised stock options, future interests in family trusts, and interspousal gifts. We also granted certiorari to determine whether the trial court properly determined Wife's child support award. Finally, we granted certiorari to determine whether a trial court's maintenance and attorney fee awards should be recalculated when its property division determinations are found to be incorrect.

We now reverse in part and affirm in part the court of appeals' judgment and hold that: (1) transfers of property from one spouse to another may, under certain circumstances, constitute "gifts" that do not constitute marital property; (2) employee stock options granted in consideration for future services, where such services have not yet been completed, do not constitute marital property; (3) a beneficiary's remainder interest in a trust from which a trustee may, in his discretion, distribute income and principal, constitutes "property" for purposes of

property division in a dissolution case; and (4) substantial errors in a trial court's property division determination or significant changes in the value of marital property may require reconsideration of a trial court's maintenance award.

## FACTS AND PROCEDURAL HISTORY

In April 1997, Wife filed a petition to dissolve her twenty-six year marriage to Husband. A decree of dissolution effective October 1997 was entered by the trial court. In its permanent orders, the trial court determined that certain assets constituted marital property and that approximately sixty percent of such property should be awarded to Wife and approximately forty percent should be awarded to Husband.

Specifically, the court found that Husband's stock options were granted by his employer, 3D Systems Corporation ("3D"), in consideration for future services and thus would not become marital property until Husband had performed those future services. Because Husband had performed approximately one year of services from the date the options were granted to the date of the permanent orders, the court found that Husband had the right to exercise roughly twenty-one percent of the options, which thus constituted marital property. However, because the exercise price of the options exceeded the value of the stock at that time, the court found that such property had minimal or no value and thus awarded Husband all of the 3D stock options.

As to the family trust established by Wife's parents, the court found that Wife had a vested remainder in the corpus of the trust because the trust could not be revoked, altered or modified. Thus, the court found that Wife's interest in the trust constituted property. The trial court found that such property constituted separate property, rather than marital property, however, because Wife's interest in the trust was a gift to her during the marriage. Nevertheless, the court also found that the appreciation on Wife's separate property interest during the marriage constituted marital property, but because the amount of such appreciation was uncertain, the court awarded the entire amount of Wife's interest in the trust to Wife. Alternatively, the court found that even if Wife's interest in the trust did not constitute marital property, it was an economic circumstance that should have been considered in dividing the marital property. The court further noted that such division would not be different even if Wife's interest in the trust were not considered to be marital property.

The trial court also found that gifts made to Wife by Husband during the marriage constituted marital property. In reaching this conclusion, the court noted that while gifts given by third parties to one spouse constitute separate property, Colorado statutes do not address the classification of interspousal gifts. In light of its recognition of the policy in Colorado that marriage is a partnership, or a shared enterprise, the court concluded that interspousal gifts constitute marital property. In the alternative, the court found that even if the gifts constituted Wife's separate property, such gifts should be considered as an economic circumstance in dividing the martial property.

The trial court further determined that because Wife lacked sufficient property to meet her reasonable needs and was unable to support herself through appropriate employment, an award of maintenance was appropriate. Thus, the court ordered Husband to pay Wife maintenance in the amount of $8,700 per month beginning in January 1998, with that amount being reduced over time to reflect Wife's increasing earning ability.

Finally, the trial court awarded Wife child support to meet the needs of her then minor daughter in the amount of $1,604 per month. The trial court also ordered Husband to pay Wife's attorney fees in the amount of $12,500.

On appeal, the court reversed the trial court's ruling as to Husband's stock options, holding that under this court's decision in *In re Marriage of Miller*, 915 P.2d 1314 (Colo. 1996), only vested stock options are marital property. *Balanson*, 996 P.2d at 220. The court of appeals reasoned that because Husband had performed part of the services that would entitle him to exercise, at future dates, options of certain shares beyond the twenty-

one percent of the shares found by the trial court to have been exercisable by Husband, the trial court should have concluded that such options constituted marital property. *Id.* at 219. Thus, the court of appeals remanded the issue to the trial court to determine the marital portion of Husband's stock options above the twenty-one percent found by the trial court to be exercisable by Husband at the time of the final orders. *Id.* at 220.

The court of appeals also held that the trial court erred in ruling that Wife held a property interest in the entire corpus of her family's trust. *Id.* The court determined Wife's father had unfettered discretion to distribute to himself as much of the income and principal as he saw fit to distribute. *Id.* at 222. Thus, the court concluded that the trust did not constitute a property interest, but merely an expectancy. *Id.* Accordingly, the court held that the trial court erred in determining that Wife held a property interest in the trust. *Id.* The court also held, however, that the trial court's error was harmless because the trial court properly considered Wife's interest in the trust as an economic circumstance in dividing the marital property. *Id.*

The court of appeals further determined that the trial court incorrectly ruled that all interspousal gifts necessarily constitute marital property. *Id.* at 223. The court held, however, that because the trial court had alternatively concluded that even if such gifts were separate property, they constituted an economic circumstance relevant in dividing the marital property, the trial court's error was harmless. *Id.*

The court of appeals also held that while the trial court was not required to reconsider its property division determination in light of a decrease in the value of one of the marital accounts, the trial court should reconsider Wife's maintenance award in light of the decrease. *Id.* at 226. Wife's maintenance award had been calculated in part based on her ability to generate a certain monthly income from her awarded portion of the value of the account. The court reasoned that because the decrease in that account's value prevented Wife from generating the expected monthly amount, her maintenance award should be recalculated. *Id.*

Finally, the court of appeals upheld the trial court's determination as to child support. *Id.* at 227. In doing so, the court of appeals rejected Wife's argument that the trial court's award failed to consider her daughter's share of the family's room and board expenses. *Id.* at 226. The court concluded that because the trial court had determined Wife's monthly needs by reducing the prior family expenditures, which had been based on a family of four, to expenses for a family of two, the daughter's standard and ongoing living expenses were included in Wife's maintenance award. *Id.* at 227.

We granted certiorari to review the court of appeals' judgment concerning the division of Husband's stock options, Wife's interest in the family trust, and the interspousal gifts. We also granted certiorari to review the court of appeals' judgment concerning child support, and to determine whether Wife's maintenance and attorney fee award should be reconsidered.[1]

1. We granted certiorari on the following issues:
 1. Whether the issue regarding the treatment of the husband's stock options is moot; if the issue is not moot, whether the court of appeals erred in its determinations regarding stock options.
 2. Whether the court of appeals erred in determining that harmless error resulted from the trial court's characterization of $650,000 of the "Sjorstrand Family Trusts" as marital property.
 3. Whether the court of appeals erred in determining that harmless error resulted from the trial court's characterization of the jewelry and furs given by the husband to the wife as marital property.
 4. Whether the court of appeals erred in not mandating that the trial court reconsider its maintenance order and attorney fee award given the extensive errors associated with the trial court's property division.
 5. Whether the court of appeals erred in affirming the trial court's child support order.
 6. Whether a decrease in the value of marital property after the entry of a decree of dissolution and while the case is under advisement, requires the trial court to apply the standards set forth in § 14–10–122, C.R.S. to modify an award of maintenance.
 7. Whether the wife's interest in the "Sjorstrand Family Trusts" is "property" that is subject to division in a divorce, where the trust is

## ANALYSIS

We have not previously addressed the appropriate treatment of unexerciseable stock options, future interests in a trust, and interspousal gifts in under the facts presented in this dissolution of marriage proceeding. Nor have we addressed whether a trial court's maintenance or attorney fee award should be reconsidered when a trial court's property division determination has been deemed to be erroneous. Thus, because these issues constitute matters of first impression, we consider not only relevant Colorado caselaw, but also caselaw from other jurisdictions and scholarly commentary found in academic sources.

### I. Standard of Review

■ In reviewing a trial court's division of property, we recognize that the trial court has great latitude to effect an equitable distribution based upon the facts and circumstances of each case. *In re Marriage of Hunt,* 909 P.2d 525, 537–38 (Colo.1995); *Graham v. Graham,* 194 Colo. 429, 431, 574 P.2d 75, 76 (Colo.1978). Thus, on review, an appellate court must not disturb a trial court's decision regarding division of property unless there has been a clear abuse of discretion. *Hunt,* 909 P.2d at 538; *Graham,* 194 Colo. at 431–32, 574 P.2d at 76.

■ Similarly, we review the trial court's determinations of Wife's maintenance and attorney fee award for an abuse of discretion. *In re Marriage of Weibel,* 965 P.2d 126, 128 (Colo.App.1998). Finally, we also review the trial court's order for child support under an abuse of discretion standard because its determinations as to the financial resources of the child and his parents, the child's standard of living, and his physical and emotional condition under section 14–10–115, 5 C.R.S. (2000), are factual in nature. *E–470 Pub. Highway Auth. v. The 455 Co.,* 3 P.3d 18, 22 (Colo.2000) (holding that "[f]indings of fact are generally reviewed under a clear error or abuse of discretion standard").

not discretionary but the trust corpus may be

### II. Division of Marital Property

The disposition of marital property in Colorado upon divorce is governed by the Uniform Dissolution of Marriage Act (the "Act") at section 14–10–113, 5 C.R.S. (2000). Under that section, a court must make an equitable distribution of marital property after considering all relevant factors, including those listed in the statute: (1) the contributions of each spouse; (2) the value of property set apart to each spouse; (3) the economic circumstances of each spouse; and (4) any increase, decrease or depletion in the value of any separate property during the marriage. § 14–10–113(1); *In re Marriage of Jones,* 812 P.2d 1152, 1154 (Colo.1991).

■ Under the Act, a determination as to property division requires two steps: first, a court must determine whether an interest constitutes "property"; if so, the court must then determine whether the property is marital or separate. *Hunt,* 909 P.2d at 529. We have previously noted that in passing the Act, the legislature intended the term "property" to be broadly inclusive. *Graham,* 194 Colo. at 432, 574 P.2d at 76. We have also recognized a definition of "property" that includes "everything that has an exchangeable value or which goes to make up wealth or estate." *Id.* (citing *Black's Law Dictionary* 1382 (4th ed.1968)). Finally, we have recognized a number of factors that should be considered when determining whether something constitutes property: "whether it can be sold, transferred, conveyed, or pledged, or whether it terminates on the death of the owner." *Id.* at 432, 574 P.2d at 77. We have also held that while enforceable contractual rights constitute property, interests that are merely speculative are mere expectancies. *Miller,* 915 P.2d at 1318; *Jones,* 812 P.2d at 1155; *In re Marriage of Grubb,* 745 P.2d 661, 664 (Colo.1987).

■ Once an interest is deemed to be "property," a court must then determine whether such property is marital or separate for purposes of dividing the marital property. *Hunt,* 909 P.2d at 529. Under the Act, "marital property" is defined as:

invaded by the income beneficiary.

property acquired by either spouse subsequent to the marriage except: (a) Property acquired by gift, bequest, devise, or descent; (b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent; (c) Property acquired by a spouse after a decree of legal separation; and (d) Property excluded by valid agreement of the parties.

§ 14–10–113(2). The Act thus creates a presumption that all property acquired during the marriage is marital property, unless the property in question falls within the listed exceptions. § 14–10–113(3); *In re Marriage of Wells*, 850 P.2d 694, 700 (Colo.1993).

Once property has been deemed to be marital, a court must value the property in order to make an equitable division. *Id.* In doing so, the property should be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree of dissolution. § 14–10–113(5); *Wells*, 850 P.2d at 700; *In re Marriage of Price*, 727 P.2d 1073, 1077 (Colo.1986).

Errors by the trial court in determining the property division in a dissolution case are reversible when the aggregate effect of such errors affects the substantial rights of the parties. Under Rule 61 of the Colorado Rules of Civil Procedure, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." C.R.C.P. 61. Such errors, therefore, are harmless. In determining whether an error in a trial court's particular ruling affects the substantial rights of the parties, a reviewing court should consider the trial court's overall property distribution. *See Hunt*, 909 P.2d at 538 ("In shaping a fair and equitable distribution, the trial court considers numerous factors in a totality-of-the-circumstances analysis."). If, for example, a trial court's error affects only a small percentage of the overall marital estate, such an error may be deemed to have been harmless and thus does not require reversal. *Id.; In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo.1988) (noting that "the key

to an equitable distribution is fairness, not mathematical precision"). In contrast, if the trial court's errors in a particular case, viewed in the aggregate, affect a large percentage of the marital estate, a remand of the case to the trial court to correct such errors is required. *See Hunt*, 909 P.2d at 538 (noting that, in light of the flexible nature of a trial court's property division determination, it is particularly wrong to impose a bright line test with respect to enhanced pension benefits because they often represent a significant portion of the aggregate value of the marital estate). Thus, we conclude that a trial court's abuse of discretion in making a particular determination as to property division may amount to reversible error only where the substantial rights of the parties are affected by the trial court's error when viewed in relation to its overall property division.

### A. Interspousal Gifts

At issue in this case is whether gifts made from one spouse to the other during the course of the marriage necessarily constitute marital property. We conclude that they do not.

The Act expressly lists among its exceptions to marital property any property received by gift during the marriage. § 14–10–113(2)(a). The Act does not, however, specify whether interspousal gifts, or only those received from third parties, are excluded from the definition of "marital property."

Although we have not previously addressed this issue, the court of appeals has held that when one spouse causes title to be placed jointly with the other spouse, a gift to the marriage is presumed, and such property constitutes marital property. *In re Marriage of Moncrief*, 36 Colo.App. 140, 141, 535 P.2d 1137, 1138 (1975) (holding a family residence placed in joint tenancy but purchased with funds the husband had accumulated solely through his own efforts prior to the marriage was presumed be a gift to the marriage and thus, marital property).

The court of appeals reiterated this principle in *In re Marriage of Stumpf*, 932 P.2d 845, 848 (Colo.App.1996). In *Stumpf*, the

court of appeals joined the majority of jurisdictions that have concluded that transfers between spouses which create joint tenancies are not excepted as "gifts" from property otherwise deemed to be marital, rather than separate in nature. *Id.; see, e.g., Turpin v. Turpin,* 403 A.2d 1144, 1146 (D.C.App.1979); *Conrad v. Bowers,* 533 S.W.2d 614, 623 (Mo. App.1975); *Pascarella v. Pascarella,* 165 N.J.Super. 558, 398 A.2d 921, 924 (1979); *McLean v. McLean,* 323 N.C. 543, 374 S.E.2d 376, 382 (1988). The *Stumpf* court reasoned that such a conclusion comports with the fundamental concept underlying the Act that marriage is a partnership or shared enterprise, and that the division of property should be based, in part, upon the relative contributions of the parties. 932 P.2d at 848.

Later, however, the court of appeals clarified that not all interspousal gifts should be deemed marital property. *In re Marriage of Bartolo,* 971 P.2d 699, 701 (Colo.App.1998). The property at issue in *Bartolo* was transferred to the husband and the wife by the wife's mother, and placed in joint tenancy. *Id.* at 699. When the couple began experiencing difficulties, however, they executed a quitclaim deed conveying the property to the wife. *Id.* at 700. The *Bartolo* court distinguished between property that has been placed in joint tenancy during the marriage by one spouse, such as the property in question in *Stumpf,* from property that once was titled in joint tenancy but was later transferred by the couple to only one spouse. *Id.* The court held that while the former type of property was a gift by one spouse to the marital estate, and thus presumed to be marital property, the latter type was not necessarily marital property. *Id.* In doing so, the court reasoned that the Act's presumption that all property acquired during the marriage constitutes marital property can be overcome by clear and convincing evidence that an interspousal transfer was intended to be a gift. *Id.*

 We are persuaded by the court of appeals' reasoning in *Bartolo.* Because the

Act does not specify whether interspousal gifts are excepted from its definition of marital property, and because such gifts are often purchased with marital funds,[2] we conclude that an interspousal transfer cannot be presumed to be a gift that is exempted from the definition of marital property. Conversely, not all interspousal gifts can be presumed to be marital property. Property that is placed in joint tenancy by a spouse during the marriage reflects an intent by the donor spouse to make a gift to the marriage. *Stumpf,* 932 P.2d at 848; *Moncrief,* 36 Colo.App. at 141, 535 P.2d at 1138. Thus, such property may be presumed to be marital property absent clear and convincing evidence to the contrary. In contrast, when determining whether transfers of property from one spouse to the other, such as that of the jewelry and furs at issue in this case, constitute marital property, a court must first determine whether the transfer was a gift to the other spouse, and therefore excluded from the definition of marital property under the Act. In order to qualify as a "gift," a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift. J. Thomas Oldham, *Divorce, Separation and the Distribution of Property* § 6.02[3][a] (2001); *see Moseley v. Moseley,* 795 S.W.2d 464, 467 (Mo.App.1990); *Grimsley v. Grimsley,* 632 S.W.2d 174, 178 (Tex.Civ.App.1982).

 Having concluded that a transfer of property from one spouse to the other that is not placed in joint tenancy may constitute a "gift" and thus be excluded from the definition of marital property, we agree with the court of appeals' determination in this case that the trial court erred in concluding that all interspousal gifts constitute marital property. *See Balanson,* 996 P.2d at 223. We disagree, however, with the court of appeals' holding that such error was harmless. The court of appeals determined that the trial court's error was harmless because of the trial court's alternative finding that even as separate property, the gifts constituted an economic circumstance of Wife that was rele-

---

2. J. Thomas Oldham, *Divorce, Separation and the Distribution of Property* § 6.02[3][a] (2001) (noting that, "Few parties believe they are waiving their rights in property when a 'gift' for the other is purchased. Most merely perceive the 'gifts' to be an expenditure of marital funds, particularly if the expenditure represents a significant portion of the marital estate.").

vant in determining an equitable property division. *See id.*

As discussed above, the disposition of marital property requires (1) a determination as to whether an interest constitutes property; (2) if so, a classification of such property as marital or separate; and lastly (3) an equitable distribution of the marital property after considering a variety of factors, including the economic circumstances of each spouse. The value and income-generating potential of a spouse's separate property may constitute an economic circumstance in determining an equitable distribution of marital property. However, a determination that separate property constitutes an economic circumstance, without further findings as to how consideration of that economic circumstance leads to an outcome identical to that resulting from a determination that such property is marital, fails to comply with the Act's requirement that an equitable division of martial property follow a preliminary determination as to whether such property is marital or separate.

We thus find that the trial court's error, when viewed in light of other errors in making its property division, was not harmless. Because the trial court did not make any specific findings as to its alternative conclusion that even as separate property, the gifts had been considered as an economic circumstance, this conclusion does not mitigate the harm of its error. In the absence of such findings, we are unable to ascertain how the trial court's consideration of the gifts as merely an economic circumstance would result in a division of marital property that is identical to one in which such property were considered to be marital property.

The trial court had valued the interspousal gifts of jewelry and fur at $60,000, or less than two percent of the overall marital estate as valued by the trial court. When viewed, however, along with other property division errors discussed below, over twenty percent of the value of the overall marital estate was affected by the trial court's errors. *See infra* p. 42. Thus, we find that the trial court's error with regard to Husband's interspousal gifts to Wife, when viewed in light of its other errors, is not harmless, but reversible.

### B. *Stock Options*

Husband argues that his resignation from 3D prior to completing the minimum term of employment required to exercise the options caused them to expire, and that therefore, the issue as to whether the trial court's treatment of Husband's stock options was proper is moot. We disagree.

We have previously held that if "a judgment, which, when rendered, cannot have any effect upon an existing controversy," the question is moot. *Reserve Life Ins. Co. v. Frankfather,* 123 Colo. 77, 79, 225 P.2d 1035, 1036 (1950). Where an issue becomes moot due to subsequent events, we will decline to render an opinion as to the merits of an appeal. *Trinidad Sch. Dist. No. 1 v. Lopez,* 963 P.2d 1095, 1102 (Colo.1998); *Humphrey v. Southwestern Dev. Co.,* 734 P.2d 637, 639 (Colo.1987).[3]

We find that the issue as to the proper treatment of husband's stock options is not moot because although the options are no longer exercisable, their treatment at the time of the trial court's final orders influenced the trial court's overall division of property and its maintenance award. As discussed below, a trial court's division of property requires consideration of the parties' economic circumstances. § 14–10–113(1)(c). Because Husband's options did not expire until he had terminated his employment with 3D in June 1999, his access to those options at the time of the trial court's final orders would constitute an economic circumstance influencing the trial court's overall property division. As discussed below, a trial court's maintenance award depends in part on its determinations in dividing the marital property. *See* § 14–10–114(2)(a), 5 C.R.S. (2000). Thus, because our

---

**3.** We have also acknowledged, however, two exceptions to the mootness doctrine. We may review a moot issue if (1) the issue is capable of repetition, yet evades review; or (2) the matter involves a question of great public importance. *Bd. of County Comm'rs v. Crystal Creek Homeowner's Ass'n,* 14 P.3d 325, 345 (Colo.2000); *Trinidad Sch. Dist. No. 1,* 963 P.2d at 1102; *Humphrey,* 734 P.2d at 639; *Feigin v. Colo. Nat'l Bank, N.A.,* 897 P.2d 814, 817 (Colo.1995).

opinion concerning the trial court's treatment of the options affects the trial court's overall property division and maintenance award, we conclude that the issue is not moot.

The court of appeals held that under our decision in *Miller*, 915 P.2d at 1314, and the court of appeals' decision in *In re Marriage of Huston*, 967 P.2d 181 (Colo.App.1998), only vested stock options constitute "property" for purposes of division after the dissolution of a marriage. Wife argues that the court of appeals misinterpreted *Miller* and that its holding conflicts with a national trend toward treating unvested stock options as marital property.

In *Miller*, we held that the question as to whether the husband's employee stock options constituted marital property depended on the extent to which the options were granted in consideration for past or future services. 915 P.2d at 1318. We reasoned that only an enforceable right constitutes "property," while an unvested interest is a mere "expectancy." *Id.* Thus, because an employee does not have an enforceable right to stock options granted in consideration for future services until the services have been performed, we concluded that an employee who has not yet performed those services does not have an interest constituting marital property for purposes of property division in a dissolution proceeding. *Id.*

In *Huston*, a division of the court of appeals interpreted our decision in *Miller*. *Huston*, 967 P.2d at 181. In doing so, the court of appeals concluded that *Miller* requires first a determination as to whether a stock option is vested, that is, whether an employee has completed the minimum term of employment necessary for him to be entitled to receive the benefit. *Huston*, 967 P.2d at 183. The court of appeals noted that if a stock option is not vested, it does not even constitute property, and the inquiry ends. *Id.* If, however, the stock option is vested, it

must then be classified as either marital or separate property. *Id.*

We disagree with this interpretation of *Miller*. As we noted in *Miller*, "[c]haracterizing ... options as nonvested, though perhaps accurate for purposes of employee benefits and tax law, may be misleading for purposes of ascertaining what interests are marital property for purposes of the Act." 915 P.2d at 1317. Thus, we do not find the issue of vesting determinative in ascertaining whether an interest in employee stock options constitutes marital property. Rather, we conclude that an employee stock option constitutes property for purposes of dissolution proceedings only when the employee has an enforceable right to the options. *Id.* at 1318; *see Grubb*, 745 P.2d at 665 (holding that because an employee who is fully vested under a pension plan has a contractually enforceable right to receive payment in the future, that right constitutes property); *Jones*, 812 P.2d at 1156 (noting that a beneficiary of a discretionary trust cannot force a trustee to pay income or principal absent fraud or abuse of discretion).

In determining whether one has an enforceable right to employee stock options, a court must look to the terms of the contract granting such options. If an employee has a presently enforceable right under the contract, regardless of whether the options are presently exercisable, such a right constitutes a property interest rather than a mere expectancy.

For example, if the contract granting the options indicates that they were granted in exchange for present or past services, in the situation for instance, where an employer offers stock options as a form of incentive compensation for joining a company, the employee, by having accepted employment, has earned a contractually enforceable right to those options when granted, even if the options are not yet exercisable.[4]

---

4. Indeed, rights to such options, though not yet exercisable, may represent valuable negotiating tools for an employee seeking employment with a new employer. *See Miller*, 915 P.2d at 1318 n. 6 (citing *In re Marriage of Short*, 125 Wash.2d 865, 890 P.2d 12, 16 (1995), in which an option granted to induce one to accept employment was

deemed to have been granted in consideration for present services, and thus constituted marital property, in noting that such options may be deemed a form of deferred compensation); *Graham*, 194 Colo. at 432, 574 P.2d at 76 (noting that the definition of "property" includes interests with an exchangeable value).

*See Miller,* 915 P.2d at 1318–19. On the other hand, if the options were granted in consideration for future services, the employee "does not have enforceable rights under the option agreement until such time as the future services have been performed." *Id.* at 1318.

In the present case, the parties do not dispute the trial court's finding that Husband's 3D stock options were granted in exchange for future services constituting his continued employment with 3D. The issue therefore, is whether, at the time of the trial court's final orders, Husband had performed the requisite services under the option contracts that entitled him to the options. If so, husband had a contractually enforceable right to the options, and they thus constituted property, requiring then a determination as to whether such property was marital or separate. If not, the options constitute mere expectancy interests and are not property.

The record indicates that in October 1996, 3D granted Husband options to purchase 300,000 shares of 3D stock. Under the terms of one of the agreements between Husband and 3D, Husband could exercise an option to purchase 62,500 of the shares in October 1997, approximately one week after the permanent orders hearing, and another 37,500 shares in October 1998. Under the terms of the other two agreements, which were entered six months to a year before the divorce decree was entered, the remaining 200,000 shares could be exercised on the first through fourth anniversaries of the original grant.

Because the record indicates that Husband had only completed the employment required to enforce his right to exercise 62,500 shares, the trial court properly determined that only twenty-one percent of the options constituted "property." Therefore, we conclude that the court of appeals erred in holding that Husband had earned the right to exercise additional options over and beyond those shares. Because the options were granted during the marriage, the trial court properly determined that they constituted marital property. Accordingly, we reverse the court of appeals' ruling remanding the case to the trial court to determine the portion of the options beyond the 62,500 shares constituting marital property and uphold the trial court's determination that only twenty-one percent of the options constituted marital property at the time of the decree.

### C. Family Trust

The record indicates that the trust that Wife's parents had established during her marriage to Husband reserved to her parents the power to alter, amend, or revoke the trust until one of them died. Thus, when Wife's mother died, the trust became irrevocable and non-modifiable. At that time, the trust was to be divided into two trusts, A and B. Under the trust instrument, Wife's father, as trustee, must pay the entire net income from both trusts to himself during his lifetime and has the discretion to invade the corpus for his own support, care, and maintenance. When Wife's father dies, the corpus of Trust A will be distributed as designated in his will, and any undesignated portion will go into Trust B. Wife's brother will become the trustee, and is required under the trust instrument to divide Trust B into as many equal shares as there are living children of the trustors. At this time, Wife and her brother are the only living children of their parents.

The parties dispute whether Wife's interest in the family trust constitutes marital property under section 14–10–113, or merely an expectancy. Although the trial court had concluded that Wife's interest in the trust constituted property because it was a vested remainder subject to divestment only if she predeceases her father, the court of appeals reversed this determination, holding instead that because Wife's father had unfettered discretion to distribute to himself as much of the income and principal as he saw fit to distribute, the trust did not constitute a property interest, but merely an expectancy. Accordingly, the court of appeals held that the trial court erred in determining that Wife held a property interest in the trust. The court also held, however, that the trial court's error was harmless because the trial court properly considered Wife's interest in the trust as an economic circumstance in dividing the marital property. We disagree with the

court of appeals' determination that Wife did not hold a property interest in the family trust.

We have previously held that a trust interest similar to that of Wife's in this case constitutes a vested interest. *In re Question Submitted by the United States Court of Appeals for the Tenth Circuit*, 191 Colo. 406, 411, 553 P.2d 382, 386 (1976). In that case, the beneficiary had a remainder interest in a trust created by the father from which the mother was to receive income for life and so much of the principal deemed to be necessary by the trustee for the mother's care, support and maintenance. *Id.* at 407, 553 P.2d at 383. Upon the mother's death, a portion of the trust's remaining principal and any accrued income was to form a new trust from which the son was to receive $1,000 per month for his life or until the fund was exhausted. *Id.* We concluded that a present fixed right to future enjoyment gives rise to a vested interest in property, even if that interest is subject to complete divestment or defeasance. *Id.* at 409, 553 P.2d at 385.

By way of comparison, we held in *Jones*, 812 P.2d at 1158, that a beneficiary's interest in a discretionary trust was not property, but merely an expectancy. The issue there was whether the wife's interest in a testamentary trust created by the will of the wife's mother constituted marital property. *Id.* at 1153. In that case, the trustees had uncontrolled discretion to distribute income and principal from the trust to the wife's father, the wife, or her descendants, for expenses deemed necessary for their health, welfare, comfort, support, maintenance and education. *Id.* Upon the father's death, the trust proceeds were to be distributed to the wife's descendants, if any, or otherwise to the mother's heirs. *Id.* After reviewing the relevant case law in Colorado discussing the issue as to whether an interest constitutes "property," we concluded that one's enforceable contractual right gives rise to a property interest, while an unenforceable interest constitutes a mere expectancy. *See id.* at 1154–57. Because we found that the trust in that case was completely discretionary, we determined that the wife had no contractual or enforceable right to income or principal from the

trust. *Id.* at 1156. Therefore, we concluded that the wife's interest in the discretionary trust was not property, and that the income received by the wife from the trust was more properly characterized as a "gift" under the Act. *Id.* at 1158.

In the present case, Wife has a future, vested interest not within the discretion of the trustee to withhold. *See id.* at 1157. Such interests are distinguishable from interests in discretionary trusts because although the value of such interests may be uncertain at the time of the dissolution of marriage, they nonetheless constitute property because they are certain, fixed interests subject only to the condition of survivorship. *See id.* Indeed, when describing future vested interests in *Jones*, we cited several cases involving trusts similar to those at issue in the present case. *Id.; Davidson v. Davidson*, 19 Mass. App.Ct. 364, 474 N.E.2d 1137, 1143–44 (1985) (holding that a beneficiary's remainder interest in a trust in which the trustees were "empowered in their uncontrolled discretion to invade principal for the benefit of [the beneficiary's] mother" constituted a property interest); *Trowbridge v. Trowbridge*, 16 Wis.2d 176, 114 N.W.2d 129, 134 (1962) (holding that a beneficiary's remainder interest in a trust from which the beneficiary's mother is entitled to (1) the net income for as long as she lives, and (2) to withdraw up to $5,000 from principal in any year plus any additional amounts deemed by the trustee to be necessary or advisable for certain purposes, constituted both a real and personal property interest).

■ Thus, we conclude that in the present case, Wife's interest in the family trust constitutes "property," as opposed to a mere expectancy. We reach this conclusion despite the fact that Wife's father must pay the entire net income from both trusts to himself during his lifetime and has the discretion to invade the corpus for his own support, care, and maintenance. These factors render the value of Wife's remainder interest uncertain, but do not convert her interest into a mere expectancy.

■ Having determined that Wife's interest in the family trust constitutes "property," we now turn to the issue of whether such

property qualifies as marital property under the Act. As discussed above, the Act creates a presumption that all property acquired during the marriage constitutes marital property unless such property falls within one of the listed exceptions. § 14–10–113(3). One of the listed exceptions, however, is "[p]roperty acquired by gift, bequest, devise, or descent." § 14–10–113(2). Because the trust was created during the marriage, we conclude that Wife's interest constitutes a gift, which is excepted from the definition of marital property under the Act. Thus, we hold that the trial court properly concluded that Wife's interest in the trust does not constitute marital property, but Wife's separate property.

▇ The trial court also properly concluded, however, that the appreciation on Wife's interest in the trust during the course of the marriage does constitute marital property under the Act. § 14–10–113(4). Such appreciation is to be calculated by determining the extent to which the property's present value at the time of the decree exceeds its value at the time of acquisition. *Id.* The trial court determined that the value of the trust at the time of its final orders was $1.3 million, but the record reveals no evidence as to the value of the trust at the time of its creation. The trial court therefore awarded Wife her entire interest in the trust, which was one half of the value of its corpus,[5] describing that property as "the marital portion of the Trust."

▇ We conclude that this award was made in error. Because Wife's interest in the trust constitutes separate property, the trial court's characterization of that interest as marital property suggests that the court had found that the entire value of the trust constituted appreciation. There is no evidence in the record to support such a finding. Therefore, we conclude that the trial court erred in awarding Wife's entire interest in the family trust to her.

We further hold that such error was not harmless. As discussed above, a trial court's abuse of discretion in making a particular determination as to property division amounts to reversible error where the substantial rights of the parties are affected by the trial court's error when viewed in relation to its overall property division. *See supra* p. 36. A review of the record indicates that the trial court's determination that the entire value of Wife's interest in the trust was appreciation and therefore marital property affected substantial rights of the parties, and thus constitutes reversible error.

We reach this conclusion notwithstanding the trial court's determination that its property division would not be any different even if Wife's interest in the Trust is not considered to be marital property since it was considered as an economic circumstance in making the overall property division equitable. As discussed above, a summary determination that the same result occurs when viewing an interest as either marital property or separate property constituting an economic circumstance, fails to comport with the requirements under the Act that a trial court determine first whether property is marital or separate before making an equitable division that considers the economic circumstances of the parties. *See supra,* p. 38.

The value of Wife's interest in the trust was $650,000, or approximately twenty percent of the total marital estate. Treatment of such a significant property interest may not result in an identical property distribution regardless of its characterization as marital or separate property. We believe that the trial court should have an opportunity to reconsider the distribution of property in light of this opinion. Thus, the substantial amount of the marital estate impacted by this error, particularly in light of the trial court's error with regard to Husband's interspousal gifts, warrants reversal of this issue. *See supra* p. 38. Accordingly, we reverse the court of appeals' ruling that the trial court's error was harmless, and remand this issue to the trial court to calculate the trust's appreciation, by determining the extent to which the trust's present value at the time of the de-

---

**5.** As discussed above, the trust instrument requires the division of Trust B's corpus upon the father's death into equal shares based on the number of the parents' living children. Because Wife and her Brother are their parents' only living children, Trust B will be divided between them when their father dies.

cree exceeded its value at the time it was created.[6]

### D. *Maintenance and Attorney Fees*

The parties raise two issues in this case concerning maintenance awards: (1) whether the trial court should modify its maintenance award given a decrease in the value of marital property after the entry of a decree of dissolution, and while the case is under advisement, and (2) whether the trial court must reconsider its maintenance and attorney fee award in light of extensive errors in its property division.

Under the Act, a court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance (1) lacks sufficient property to provide for his reasonable needs and (2) is unable to support himself through appropriate employment. § 14–10–114, 5 C.R.S. (2000). In doing so, a court must consider all relevant factors such as "[t]he financial resources of the party seeking maintenance, including marital property apportioned to such party, and the party's ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party." § 14–10–114(2)(a).

■ Thus, because the Act requires a consideration of the adequacy of the property and earning capacity of the party seeking maintenance, we have previously held that a trial court's determinations when making a maintenance award depend on its findings concerning property division. *In re Marriage of Jones,* 627 P.2d 248, 252 (Colo.1981). In addition, the Act provides, and we have acknowledged, that a "maintenance award is subject to modification as to future installments upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." *Id.* at 253; § 14–10–122(1)(a), 5 C.R.S. (2000). Thus, substantial errors in a trial court's property division determination or significant changes in the value of marital property could require a reconsideration of a maintenance award.

■ In this case, we have determined that the trial court erred in its treatment of Husband's interspousal gifts to Wife and Wife's interest in the family trust when making its property division. In the aggregate, these errors impacted the trial court's treatment of a substantial portion of the total marital assets. Furthermore, the court of appeals determined that a significant decrease in the value of one of Husband and Wife's marital accounts (the "Everen Account") significantly reduced Wife's ability to earn as much investment income as the trial court had calculated in its maintenance determination. Thus, we hold that on remand the trial court should reconsider its maintenance award in light of its new property division and in light of the significant decrease in value of the Everen Account. Similarly, because a trial court's determination in making an attorney fee award must consider the financial resources of both parties, we hold that the trial court's errors in making its property division requires a reconsideration of its attorney fee award as well. Accordingly, we remand the case to the trial court for such a reconsideration.

### III. Child Support

Under the Act, a court may order a parent owing a duty of support to a child of the marriage to pay child support after considering all relevant factors, including: (1) the financial resources of the child, the custodial parent and the noncustodial parent; (2) the child's standard of living had the marriage not been dissolved; and (3) the physical and emotional condition of the child and his educational needs. § 14–10–115. The Act also provides that the basic child support obligation must be determined using the schedule listed in section 14–10–115(10)(b), and that a judge may use discretion to determine child support in circumstances where the

---

6. Other courts that have addressed the valuation of similar interests have suggested an approach similar to that taken when valuing pensions. *See Davidson,* 474 N.E.2d at 1145 n. 12. Under this approach, we conclude that the trial court may consider a variety of circumstances when determining the present value of the trust, including actuarial information concerning the life expectancy of Wife's father and information concerning the probability and extent to which the father will need to invade principal for his maintenance. *Grubb,* 745 P.2d at 666.

family's combined and gross income exceeds the uppermost levels of the guideline. *Id.*

 Wife argues that the trial court erred in its determination concerning child support by calculating only her daughter's extraordinary expenses, and failing to consider her daughter's necessary living expenses. We disagree.

 We agree that a child support award should consider a reasonable pro rata portion of the necessary general family expenses, *In re Marriage of Schwaab*, 794 P.2d 1112, 1114 (Colo.App.1990). In this case, however, such expenses were considered in determining Wife's maintenance award. In calculating that award, the trial court determined Wife's monthly expenses by dividing the prior family expenses, which had been spent on a family of four, to expenses for a family of two. Thus, we affirm the court of appeals' holding that the daughter's pro rata share of general family expenses was included in Wife's maintenance award.

### CONCLUSION

In summary, we hold that the trial court abused its discretion by erring in its determinations with regard to Husband's interspousal gifts to Wife and Wife's interest in her family's trust. These errors, when viewed in the aggregate, represent over twenty percent of the marital estate and thus affect the substantial rights of the parties and require reversal. We also hold that, in light of these errors and the significant decrease in value of one of the marital assets, the trial court should reconsider its maintenance and attorney fee awards. Finally, we hold that the court of appeals erred in reversing the trial court's determination as to Husband's employee stock options.

Thus, we reverse the court of appeals' ruling with regard to the stock options and return the case to that court with directions to remand it to the trial court for reconsideration of its division of marital property, and its maintenance and attorney fee awards con-

sistent with the views expressed in this opinion.