23CA2216 Marriage of Gabriel 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2216
Jefferson County District Court No. 22DR31096
Honorable Christopher B. Rhamey, Judge

---

In re the Marriage of

David Gabriel,

Appellee,

and

Arina Gabriel,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE BROWN
Welling and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Rathod Mohamedbhai LLC, Felipe Bohnet-Gomez, Denver, Colorado, for Appellee

Arina Gabriel, Pro Se

¶ 1    In this dissolution of marriage case involving David Gabriel (husband) and Arina Gabriel (wife), wife appeals portions of the district court's permanent orders concerning the division of marital property and the allocation of parental responsibilities. We affirm the court's judgment.

## I.    Background

¶ 2    Husband and wife were married in 2014 and have one daughter. In August 2018, wife's mother, Faina Ulman, offered to give the parties $100,000 as a down payment on a house in exchange for being able to live there with the family. Utilizing the money from Ulman, the parties jointly purchased the marital home in November 2018. In November 2022, husband moved out of the marital home and purchased a mobile home using funds from a home equity line of credit (HELOC) the parties had jointly obtained in April 2021.

¶ 3    Husband filed his petition for dissolution of the marriage in December 2022. The following year, the district court held a permanent orders hearing. In October 2023, the court entered an oral ruling dividing the marital estate and allocating parental responsibilities and then reduced that order to writing two weeks

1

later.  Wife unsuccessfully moved the court to amend or reconsider the permanent orders, making several of the arguments she now raises on appeal.

## II.     Property Division

¶ 4     Wife contends that the district court erred in dividing the marital estate by (1) equally allocating the marital assets and debts; (2) rejecting an alleged stipulation that husband would be responsible for the HELOC debt; and (3) failing to account for husband's alleged violation of the automatic temporary injunction imposed by section 14-10-107(4)(b)(I), C.R.S. 2024.  We address and reject each contention in turn.

### A.     Applicable Law and Standard of Review

¶ 5     Under the Uniform Dissolution of Marriage Act, a district court must take specific steps to equitably divide the marital estate.  *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); § 14-10-113, C.R.S. 2024.  First, the court must determine whether an interest constitutes "property."  *Balanson*, 25 P.3d at 35.  The term "property" broadly includes "everything that has an exchangeable value or which goes to make up wealth or estate."  *Id.* (quoting *In re Marriage of Graham*, 574 P.2d 75, 77 (Colo. 1978)).

¶ 6    Second, once the court determines that an asset is "property," it must determine whether the property "is marital and subject to division or separate and shielded from division." *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 49. Generally, all property acquired during the marriage is presumed to be marital unless it fits into one of the exceptions listed in section 14-10-113(2). § 14-10-113(3); *In re Marriage of Seewald*, 22 P.3d 580, 586 (Colo. App. 2001).

¶ 7    Third, once the court deems property to be marital, it must value the property in order to make an equitable division. *Balanson*, 25 P.3d at 36. The court must value the property as of the date of the decree of dissolution or the date of the hearing on the disposition of the property if the hearing precedes the date of the decree. *Id.*; § 14-10-113(5).

¶ 8    Finally, the court "shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors." § 14-10-113(1). The factors that the court must consider include "[t]he contribution of each spouse to the acquisition of the marital property"; "[t]he value of the property set apart to each spouse"; "[t]he economic circumstances of each spouse at the time the division of property is

to become effective"; and "[a]ny increases or decreases in the value of the separate property of the spouse during the marriage or the depletion of the separate property for marital purposes." § 14-10-113(1)(a)-(d).

¶ 9    Notably, the "[a]llocation of marital debts is in the nature of property division." *In re Marriage of Jorgenson*, 143 P.3d 1169, 1172 (Colo. App. 2006). Thus, the court must also classify debts as marital or separate, determine their value, and divide them among the spouses, just as it does the assets. *See id.*

¶ 10   The overall property division must be equitable, but it need not be equal. *In re Marriage of Wright*, 2020 COA 11, ¶ 3. "[T]he key to an equitable distribution is fairness, not mathematical precision." *In re Marriage of Cardona*, 2014 CO 3, ¶ 34. To that end, a district court has "great latitude to effect an equitable distribution based upon the facts and circumstances of each case." *Id.* (quoting *In re Marriage of Hunt*, 909 P.2d 525, 537 (Colo. 1995)). We review a court's order dividing a marital estate for an abuse of discretion. *Medeiros*, ¶ 28. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or if it misapplies the law. *Id.*

B.   The District Court Acted Within Its Discretion in Equitably Allocating the Marital Estate

¶ 11   Wife contends that the district court abused its discretion by ordering a nearly equal allocation of the marital estate.  Reviewing the court's written and oral orders together, *see In re Marriage of Pawelec*, 2024 COA 107, ¶ 41, we disagree.

¶ 12   Temporarily setting aside the marital home, which the parties agreed to sell, the court allocated the remaining marital assets and debts as provided in the chart below:

| Asset or Debt | Husband | Wife |
| --- | --- | --- |
| Down payment debt to Ulman | ($50,000) | ($50,000) |
| Mobile home | $53,000[1] | |
| 2018 Nissan Maxima | | $6,300 |
| 2023 Hyundai Kona | $4,356.78 | |
| USAA checking account – 1469 | $4,364.07 | |
| USAA savings account – 1442 | $1,000.07 | |
| USAA checking account – 3347 | | $5,028.16 |
| USAA savings account – 3355 | | $6,213 |
| Investment fund | $2,038.14 | |
| USAA credit card – 9604 | | ($2,258) |

---

[1] The district court did not make an express finding as to the value of the mobile home it allocated to husband, but its calculations imply that it found that the mobile home was worth $53,000 — the value listed in the bill of sale.  Wife did not offer contrary evidence at the permanent orders hearing and does not challenge the court's value findings on appeal.

| Asset or Debt | Husband | Wife |
|---|---|---|
| Rocky View dental debt | | ($357) |
| USAA credit card – 2878 | ($8,297.37) | |
| Chase Amazon visa card | ($61.24) | |
| Capital One credit card - 1784 | | ($455.81) |
| HELOC loan | ($82,341.88) | |
| Total | ($75,941.43) | ($35,529.65) |

¶ 13    To balance this disproportionate allocation, which resulted in "a very different division of assets that . . . would be unequitable and not just," the court ordered that husband "shall receive . . . $40,000 of the equity off the top of the selling of" the marital home, and "[t]he remainder will be split fifty-fifty." Accordingly, before accounting for the equal division of the remaining proceeds from the sale of the marital home, the court's orders resulted in a near equal division of the marital estate, with wife having been allocated $35,529.65 in debt and husband having been allocated $35,941.43 in debt.

¶ 14    On appeal, wife does not contest the court's findings regarding the value of the marital property or argue why she should be entitled to more than roughly fifty percent of the marital estate. Instead, wife contends that by allowing husband to receive the first $40,000 of the proceeds from the sale of the marital home, the

court is forcing her to pay half of the HELOC debt, which she claims is husband's separate property. She argues that "[h]usband was the only one who benefit[ed] from the mobile home he bought and improved with a $69k HELOC cash-out; then added $14k to that HELOC, maxing it out, to pay attorney fees for this case." She contends that it is unjust for the court to require that she pay "for half of [h]usband's mobile home . . . and half of his attorney fees, although she will receive no benefit from these."

¶ 15     As an initial matter, it appears that wife misunderstands the district court's orders. Because the mobile home was acquired during the marriage, the court correctly determined that it was a marital asset. *See* § 14-10-113(3). Similarly, because the HELOC debt was incurred during the marriage, the court correctly determined that it was a marital debt. *See id.* The court did not, as wife appears to argue, determine that the mobile home and the HELOC debt were husband's *separate* property and then erroneously include them in the marital estate. Instead, once the court determined that the mobile home and HELOC debt were marital property, it had the discretion — indeed, the obligation — to divide that property equitably between the parties. *See*

7

§ 14-10-113(1). The court allocated the entirety of the HELOC debt to husband along with the asset that would offset most of that debt — the mobile home.

¶ 16 Against this backdrop, we reject wife's contention that the court ordered her to pay half of the HELOC from *her share* of the proceeds from the sale of the marital home. The illustration of the sale set forth in wife's appellate briefs misses the mark. We provide the following alternative (and simplified) example to illustrate how the district court's order will work.

¶ 17 After paying real estate transaction fees and the mortgage (*but not the HELOC*), let us assume the total proceeds from the sale of the marital home are $300,000.[2] As part of its oral ruling, the court ordered the parties to repay the $100,000 debt to Ulman once the home is sold, leaving $200,000 to be divided among them. Because husband is entitled to the first $40,000, $160,000 remains to be split evenly between the parties. Thus, husband would get

---

[2] The parties stipulated that the value of the marital home is $527,000 and that the first mortgage held a principal balance of $272,178.77. To offer a simplified illustration, we round the difference ($254,821.23) to $300,000.

$120,000 ($40,000 + $80,000) and wife would get $80,000 from the sale of the marital home.

¶ 18    But husband remains solely obligated to pay the roughly $82,000 HELOC debt from his share of the sale proceeds; wife has no corresponding obligation.  Indeed, in its order denying wife's post-trial motion, the court made clear that "if selling the [marital home] is contingent on [husband] paying back the HELOC loan, [husband] must take actions to facilitate the [c]ourt's order of selling the home which may require him to pay off the debt."

¶ 19    As a practical matter, if husband does not pay off the HELOC before the home is sold, it must be paid at the time of sale, before the parties receive any sale proceeds.  In that circumstance, the entire HELOC debt would be charged to husband, reducing his ultimate net share of the sale proceeds.  Under our illustration, after paying Ulman and the HELOC, $118,000 in sale proceeds would remain to be divided among the parties ($300,000 - $100,000 - $82,000 = $118,000).  But from that amount, husband

would receive just $38,000 ($120,000[3] - $82,000 = $38,000) while wife would still receive $80,000.

¶ 20    Returning to the propriety of the $40,000 setoff to husband, we perceive no inequity.  After the court allocated the marital assets and debts, husband shouldered a disproportionate share of the debt (roughly $40,000 more than wife), which was not entirely attributable to the difference between the HELOC debt and the mobile home value (roughly $29,000).  In other words, even if the HELOC debt and mobile home value were not considered, husband would still have been allocated less of the marital estate than wife (or, said another way, more of the marital debt than wife).  Viewed in this context, the equalization payment was not designed to reimburse husband for the HELOC debt specifically, but to make the overall distribution of the marital estate equitable given the parties' respective circumstances.

¶ 21    Finally, wife argues that requiring her to pay any portion of the HELOC debt is inequitable because husband used funds from

---

[3] Recall, $120,000 ($40,000 + $80,000) represents the net proceeds husband would have been entitled to assuming he paid off the HELOC before the sale of the property.

the HELOC to pay for improvements to the mobile home and his attorney fees. First, any improvements to the mobile home should have been reflected in its valuation, which wife does not challenge on appeal. Second, husband asked the court to consider the amounts the parties had paid in attorney fees as marital debt subject to equitable division by the court. Wife did not object to that proposal, and at the end of the permanent orders hearing, the court asked wife how much she had paid in attorney fees. Although it is unclear where in the marital assets or debts wife's attorney fees are reflected, wife does not argue that the court failed to account for them.

¶ 22    In the end, we perceive no abuse of discretion in the district court's near equal division of the marital estate. *See In re Marriage of Smith*, 2024 COA 95, ¶¶ 66-69 (the district court was within its discretion when it ordered a "relatively equal allocation of the marital estate"); *In re Marriage of Paulsen*, 677 P.2d 1389, 1390 (Colo. App. 1984) (the district court was within its discretion "to effect an equal division of property" and to "equalize" the "net awards").

## C. The District Court's Order is Consistent with the Parties' Alleged Stipulation Concerning the HELOC Debt

¶ 23 Wife contends that the district court erred by not giving effect to the parties' alleged stipulation that husband would be solely responsible for the entirety of the HELOC debt as his separate property. In support of her contention, wife directs us to a sentence in the joint trial management certificate (JTMC) which reads, "[Husband] has agreed with [wife] that the repayment of the HELOC will come from his share of the [marital home] proceeds." We are not persuaded that the court erred.

¶ 24 Husband disputes that the parties reached any agreement that he "would be solely responsible for the HELOC debt or that it should not be characterized as marital debt." Instead, husband argues that "the parties merely agreed that the [c]ourt should allocate the marital debts 'such that [h]usband is responsible for paying all debts in his name, and [w]ife is responsible for paying all debts in her name.'"

¶ 25 Because the classification of property as marital or separate is a legal determination, the court is not bound by the parties' stipulation regarding its character. *See Smith*, ¶¶ 41-42 ("The party

seeking to have the property declared separate bears the burden to establish that it retains its separate character.").  But even if we accept that the statements made in the JTMC amount to a stipulation that husband will be solely responsible for paying back the HELOC debt, we conclude that the court's order is consistent with that stipulation.  As explained above, husband remains obligated to pay the roughly $82,000 HELOC debt and wife has no corresponding obligation.  And nothing in the JTMC suggests that the parties agreed the HELOC debt would be deemed husband's *separate* property.

### D. The Court Considered Husband's Use of Marital Assets when Allocating the Marital Estate

¶ 26    Wife contends that the district court abused its discretion by failing to consider husband's alleged violation of the temporary injunction imposed by section 14-10-107(4)(b)(I).  She argues that the injunction protects the parties "through an automatic restraint on their ability to hurt the other spouse physically, emotionally, or financially" and that husband violated these restraints when he "cash[ed] out $82K from the HELOC in his name, to serve his own

interests by buying and improving his own domicile/mobile home, and paying for his attorney fees in this case."

¶ 27 Section 14-10-107(4)(b)(I)(A) enjoins divorcing spouses "from transferring, encumbering, concealing, or in any way disposing of, without the consent of the other party or an order of the court, any marital property, except in the usual course of business or for the necessities of life." *See In re Storey*, 2022 CO 48, ¶ 42. The temporary injunction takes effect against the petitioner "[u]pon the filing of a petition for dissolution of marriage." § 14-10-107(4)(b)(I).

¶ 28 Preliminarily, husband contends that wife failed to preserve any argument that his alleged violation of the temporary injunction should have affected the district court's equitable distribution of the marital estate. As evidence of preservation, wife directs us to two pages of the parties' JTMC and the entirety of the permanent orders hearing transcript. The cited portions of the JTMC do not reference husband's alleged violation of the temporary injunction. And our review of the cited transcript reveals that wife mentioned the temporary injunction only in connection with husband using funds from the HELOC to purchase the mobile home.

¶ 29    But husband bought the mobile home in November 2022 before he filed the petition for dissolution of marriage the following month.  Because husband used the money drawn from the HELOC before the temporary injunction took effect, this transaction could not have violated the injunction.  *See Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 796 (Colo. App. 2001) ("The purpose of an injunction is to prevent 'future harm,' not to penalize a defendant for alleged past unauthorized actions.") (citation omitted), *abrogated on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments,* 159 P.3d 116 (Colo. 2007).  Thus, the district court did not abuse its discretion by not identifying husband's purchase of the mobile home as a violation of the temporary injunction.

¶ 30    In her reply brief, wife provides a different citation to a section of the JTMC addressing attorney fees, in which she "request[ed] notice of [husband's] nonconsensual violation of the temporary injunction, where [husband] took out a portion of the marital HELOC to pay his attorney without [wife's] consent."  We reject wife's contention for three reasons.

¶ 31    First, wife had an obligation to identify in her opening brief "the precise location in the record where" her contested issue was preserved, C.A.R. 28(a)(7)(A), and we typically do not consider arguments raised for the first time in a reply brief, *In Interest of L.B.*, 2017 COA 5, ¶ 48.

¶ 32    Second, even considering the new record citation provided in the reply brief, we are not persuaded that wife has preserved the issue for appeal. While wife included a single line in the JTMC raising the issue, that line appeared in her request for attorney fees, and wife does not appeal the court's order regarding attorney fees. Wife did not raise the issue at the permanent orders hearing, develop any argument before the district court as to how husband's alleged violation of the temporary injunction should have impacted the equitable distribution of the marital estate, or obtain a ruling on the matter. *See In re Marriage of Turilli*, 2021 COA 151, ¶ 12 ("An issue is preserved for appeal when it is brought to the court's attention and the court ruled on it."). As a result, the court never had a meaningful opportunity to consider wife's argument. *See Gestner v. Gestner*, 2024 COA 55, ¶ 18 ("[I]ssues not raised in or

decided by the district court generally will not be addressed for the first time on appeal.").

¶ 33    Third, considering wife's argument on the merits, we conclude that husband did not violate the temporary injunction because "marital assets can be, and regularly are, used to pay attorney[] fees during the course of a divorce proceeding." *Storey*, ¶ 43.

### III.    Allocation of Parental Responsibilities

¶ 34    Wife contends that the portion of the district court's order pertaining to the child's attendance at religious services infringes on her fundamental right to parent. We disagree.

### A.    Applicable Law and Standard of Review

¶ 35    All citizens enjoy the right to freely pursue their religious beliefs as guaranteed by the Free Exercise Clause of the First Amendment of the United States Constitution and applied to the states through the Due Process Clause of the Fourteenth Amendment. *In re Marriage of McSoud*, 131 P.3d 1208, 1215 (Colo. App. 2006). Parents also have the fundamental right to make decisions concerning the care, custody, and control of their children. *Id.*; *Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[T]he Due Process Clause of the Fourteenth Amendment protects the

17

fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

¶ 36     "A parent's right to determine the religious upbringing of a child derives from the parent's right both to exercise religion freely and to the care, custody, and control of a child." *McSoud,* 131 P.3d at 1215. Accordingly, even in cases where a parent lacks decision-making authority with respect to religion, that parent nevertheless retains a constitutional right to educate their child in their chosen religion. *Id.* at 1215-16; *see also In re Marriage of Crouch,* 2021 COA 3, ¶ 27 ("A parent's free exercise rights are not implicated by a court's allocation of decision-making responsibility between parents.").

¶ 37     Allocating parental responsibilities is a matter within the sound discretion of the district court. *Crouch,* ¶ 21; *Pawelec,* ¶ 45. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *Medeiros,* ¶ 28. However, we review de novo whether the court's order violates wife's constitutional rights. *See In re Marriage of Newell,* 192 P.3d 529, 535 (Colo. App. 2008).

## B.    The District Court's Order Does Not Infringe on Wife's Constitutional Right to Parent

¶ 38    Wife argues that the district court's order concerning the child's attendance at religious services on Sunday mornings infringes on her fundamental right to make decisions concerning the care, custody, and control of her child.  We consider wife's contention in the context of the court's overall allocation of parental responsibilities.

¶ 39    To accommodate wife's work schedule on Friday and Saturday evenings, the court ordered that wife have parenting time from Sunday through Tuesday and that husband have parenting time from Thursday to Saturday, with the parents alternating Wednesdays.[4]  The court also ordered that

> [husband] and [wife] shall agree on the
> religious facility that the child is to attend on
> Sunday mornings.  If no agreement is made,
> the party shall continue to attend the same

---

[4] It appears that the district court's written order contains a typo regarding the parenting time schedule.  The written order states, "[Wife] will have parenting time Sunday through Thursday. [Husband] shall have parenting time Thursday through Saturday. The parties will alternate on Wednesdays."  Because the parties cannot alternate Wednesdays if Wednesday parenting time is allocated to wife, we assume that the court intended for its written order to parallel its oral order, which correctly reflected that wife's parenting time is from Sunday to *Tuesday*.

religious facility that was in place at the time of the separation. [Husband] is responsible for taking the child to [the] religious facility on Sunday morning pursuant to the parenting plan issued in this order. [Wife] is responsible for picking up the child from any religious activity on Sunday morning.[5]

Finally, the court ordered that the parents have joint decision-making responsibility.

¶ 40    Wife argued in her post-trial motion that the court's order meant "that the child be raised with one religion" and infringed "on the co-parents' rights to make joint decisions about religion." In denying wife's motion, the court clarified that wife "is free to take the child to any religious facility during her parenting time" and that it "did not order the child to be raised in one religious setting or restrict the opportunity for religious freedom." Rather, the court explained that it merely "made a decision surrounding parenting time on Sunday [m]ornings."

---

[5] The district court actually ordered that "[wife] is responsible for taking the child to religious facility on Sunday morning" and that "[husband] is responsible for picking up the child from any religious activity on Sunday morning," but given that the child would be with husband Saturday night into Sunday morning and that wife's parenting time was to begin on Sunday morning, it appears that the court reversed the party designations in this part of its written order.

20

¶ 41    On appeal, wife argues that the portion of the court's order requiring the child to "attend the same religious facility that was in place at the time of the separation" requires the child to attend husband's religious services and infringes on wife's right to make decisions about her child's religion.  We are not persuaded.

¶ 42    First, the court's order does not implicate wife's right to freely exercise religion under the First Amendment.  A plain reading of the order reveals that it does not prohibit wife from practicing the religion of her choice, require that she accompany the child to husband's religious services, or prevent her from educating the child in her chosen religion.  *See McSoud,* 131 P.3d at 1215-16.

¶ 43    Second, the court's order does not require the child to be raised in any particular religion or restrict wife's right to make religious decisions for her child.  Although nothing in the original order imposed such restrictions, the court made clear in its order denying wife's post-trial motion that wife was free to educate the child in her chosen religion and take the child to religious services of her choosing during her parenting time.  *See id.*

¶ 44    Third, the court's order is reasonably understood as an attempt to facilitate the parenting time exchanges that were to

occur on Sunday mornings by identifying the location for such an exchange, absent the parties' agreement to a different arrangement. Given that the child was to transition from husband to wife on Sunday mornings because wife worked late on Saturday nights, the court tried to give the parties a practical solution for parenting time exchanges. It did not mandate the child's religious upbringing.

¶ 45 Evaluated in this context, the district court's order did not infringe on wife's fundamental right to parent, and we cannot conclude that the court abused its discretion.

## IV. Disposition

¶ 46 We affirm the district court's judgment.

JUDGE WELLING and JUDGE MOULTRIE concur.